[L. A. No. 403.    Department Two.—October 5, 1898.]

Estate of MARCUS L. OLMSTED, Deceased.    ALBERT M.
.OLMSTED et al., Contestants of Will, Respondents, v.
C. A. BUSS et al., Defendants to Contest.    C. A. BUSS,
Proponent of Will, Appellant.

CONTEST OF WILL—EVIDENCE—DECLARATIONS OF TESTATOR—APPEAL—
OBJECTION OF RESPONDENT.—Upon appeal from a judgment rendered
in a contest of the probate of a will, rejecting the probate
upon the ground of a revocation of the will by the testa-
tor, an objection of the respondent to evidence introduced
by the appellant showing declarations of the testator made
subsequently to the alleged revocation that he had a will and
that it was all right, as being no part of the *res gestae*, and
therefore inadmissible, is not subject to review; but the case
must be considered upon such appeal in the light of all the
evidence disclosed in the record.

ID.—REVOCATION OF WILL—CANCELLATION OF SIGNATURES.—A will may
be revoked by cancellation of the signatures of the testator
upon the margin of the pages and subscription to the will, with
the intent of accomplishing a revocation.

ID.—BURDEN OF PROOF—PRESUMPTIONS.—The burden upon the contest-
ant to prove the revocation of a will proposed for probate is
sustained *prima facie* by proof that the will, when found, bore
the marks of cancellation upon it; and it is presumed the marks
were made by the testator, with the intent of revoking the in-
strument.

ID.—CORROBORATIVE EVIDENCE—INTENT TO MAKE NEW WILL.—Writ-
ings upon the envelope containing the proposed will, and after
the end of the will, in the handwriting of the testator, indicating
his intent to make a new will, owing to a depreciation in his
property, though not executed with the formalities of a will,
and not, therefore, sufficient of themselves to establish a revo-
cation of the will, afford strong corroborative evidence as to the
presumed intent of the testator to revoke the will by cancella-
tion of his signature.

ID.—CONFLICTING EVIDENCE—SUPPORT OF FINDING—APPEAL.—Evidence
of the declarations of the testator, made after the cancellation
of his signatures, that he had a valid will, when considered
upon appeal, though received against the objections of the re-
spondent, presents merely a conflict of evidence as against the
presumptions arising from such cancellation, and the corrobo-
rative evidence in support of the presumption of intent to re-
voke the will, and a finding that the cancellation was made for
the purpose of revoking the will, cannot be disturbed upon ap-
peal.

ID.—DEPENDENT REVOCATION—NEW DEFECTIVE WILL—APPLICATION OF RULE.—The doctrine that where the destruction of a will is connected with the making of another will, so as fairly to raise the inference that the revocation was intended to depend upon the efficacy of the new disposition, such will be its legal effect, and that if the new will is inoperative from any defect, the revocation fails, and the original will remains in force, is dangerous in its application, and must be held inapplicable, where the original will was canceled with intent to revoke it, and there was no attempt to make a new will, although there was an evident intention to make another will at some future time, owing to a change in the property of the testator.

ID.—FINDING—"PURPOSE" OF REVOCATION—"INTENT."—A finding that the testator canceled and obliterated the will and his signature thereto "for the purpose of revoking the same" is not defective for not literally following the language of the statute "with the intent and for the purpose of revoking." The expressions "intent" and "purpose" are synonymous and identical in meaning.

ID.—SANITY OF TESTATOR AT TIME OF REVOCATION—OMISSION IN FINDINGS—PRESUMPTION.—The omission of the court to make a finding that the acts of revocation were performed by the testator when he was of a sound and disposing mind is immaterial, where there was no issue as to his sanity or mental competency; and where he was found to be of a sound and disposing mind when he made the will, his sanity is presumed to have continued until it was revoked, in the absence of evidence to the contrary.

APPEAL from a judgment of the Superior Court of San Diego County and from an order denying a new trial. George Puterbaugh, Judge.

The facts are stated in the opinion of the court.

Parrish & Mossholder, for Appellant.

The burden was upon the contestants to prove a revocation of the will throughout the contest. (Williams on Executors, 4th Am. ed., sec. 130; Wharton on Evidence, sec. 894; *Blume v. Hartman*, 115 Pa. St. 32; 2 Am. St. Rep. 525; *Behrens v. Behrens*, 47 Ohio St. 323; 21 Am. St. Rep. 820.) Drawing a line with a pen and ink through the name of the testator is not a revocation by cancellation or obliteration, where the name is not rendered illegible. (Redfield on Wills, 4th ed., sec. 320; *Bethell v. Moore*, 2 Dev. & B. 311; *Will of Ladd*, 60 Wis. 193; 50 Am. Rep. 355; *Gay v. Gay*, 60 Iowa, 415; 46 Am. Rep. 78; *Grace v.*

*Northwestern Relief Assn.*, 87 Wis. 562; 41 Am. St. Rep. 62; *Lovell v. Quitman*, 88 N. Y. 377; 42 Am. Rep. 254; *Law v. Law*, 83 Ala. 432.) Interlineations and alterations showing an intent to make a new will are to be disregarded if the alterations are not so made as to take effect and the original is legible. (Civ. Code, sec. 1292; *Wolf v. Bollinger*, 62 Ill. 374; *Jackson v. Holloway*, 7 Johns. 395.) Evidence of the testator's declarations is competent to rebut the intent of revocation. (*Collogan v. Burns*, 57 Me. 449; *Smock v. Smock*, 11 N. J. Eq. 156; *Smiley v. Gambill*, 2 Head, 164; 1 Redfield on Wills, secs. 322, 323.)

Haines & Ward, for Respondents.

The finding of the will in the testator's possession, canceled, raises the presumption that the cancellation was his act, and was intended to revoke the will. (*Will of White*, 25 N. J. Eq. 501, and cases cited, 503; *Smock v. Smock*, 11 N. J. Eq. 156, and cases cited, 163; *Bennett v. Sherrod*, 3 Ired. 303; 40 Am. Dec. 410; *Townshend v. Howard*, 86 Me. 285; *Woodfill v. Patten*, 76 Ind. 575; 40 Am. Rep. 269; *Estate of Tomlinson*, 133 Pa. St. 245; 19 Am. St. Rep. 637; *King v. Ponton*, 82 Cal. 420.) Intent to make a new will, from dissatisfaction with the canceled will, is strong proof of the intent to revoke it. (*Townshend v. Howard*, supra; *Semmes v. Semmes*, 7 Harr. & J. 388; *Johnson v. Brailsford*, 2 Nott & McC. 272; 10 Am. Dec. 601; *Hairston v. Hairston*, 30 Miss. 276; American Leading Cases, Hare & Wallace's notes, 651.) Parol declaration of the testator to rebut the intent to cancel the will must be contemporaneous with the act, and form part of the *res gestae*. (*Waterman v. Whitney*, 11 N. Y. 157, 162; 62 Am. Dec. 71; *Eighmy v. People*, 79 N. Y. 546.)

HENSHAW, J.—This is an appeal from the judgment and decree of the superior court refusing probate to an instrument offered as the last will and testament of Marcus L. Olmsted, deceased. C. A. Buss is the proponent of the will, and he, with Martha Buss, Solon C. Buss, Ella M. Stockton, and others, stand as defendants to the contest. The contestants, occupying the position of plaintiffs in this proceeding, are the brothers and sister of the deceased. By the evidence it was disclosed without conflict that the document offered for probate was duly exe-

cuted by Marcus L. Olmsted as his will upon May 31, 1893.
At that time his attorney indorsed on an envelope the words,
"Last will and testament of Marcus L. Olmsted, May 31, 1893,"
and delivered it to Olmsted, with the will inclosed, and with no
other writing thereon. Olmsted died upon January 15, 1895.
At the time of his death, and for a year immediately preceding
it, he resided with Mrs. Martha Buss, who kept house for him,
and who is one of the defendants seeking the admission of the
instrument to probate. She is likewise the mother of the pro--
ponent, C. A. Buss, and of the codefendant, Solon C. Buss.
Upon Sunday, January 19, 1896, after the burial of Olmsted,
Solon C. Buss met by appointment Albert Olmsted, a brother
of the deceased and a contestant, and one Ryder, at the house
of his mother, Martha Buss, to examine the personal effects
of the decedent. Buss, Olmsted, and Ryder went into the bed-
room which had been the death chamber, and there Buss, in
the presence of the others, opened a trunk with one of a number
of keys which had been given to him by his mother. In the
trunk were two locked tin boxes. These boxes had belonged to
the deceased, and had been kept by him in a closet off his room.
After his death they had been locked in the trunk by the house-
keeper, Mrs. Buss. The keys had been taken from the pocket
of the trousers of the dead man on the evening of or the next
day after his death by Solon C. Buss and Albert M. Olmsted, and
were by them handed to Mrs. Martha Buss, the housekeeper
in charge. With one of the keys so delivered to his mother
Solon Buss testified that he unlocked the tin boxes and in one
of them found the will. When found, it was enclosed in the
envelope, which bore the indorsement of the attorney above set
out. After examining and reading the will in the presence of
Ryder and Olmsted, Buss retained possession both of the en-
velope and of the will until they were filed with the clerk of
the court. The writing upon the will and upon the envelope,
and all the ink and pencil marks upon the will, were there when
it was found. The will was inclosed in the original envelope
furnished by the attorney, and upon the envelope were certain
memoranda in pencil in the handwriting of the testator. Upon
one side of the envelope was written, "July 4th. Make over,"
and upon the obverse side the following, "This has not been

renewed up to this fifteenth day of October, 1895. Neglected it, thinking I would sell something." Upon the face of the instrument itself the lines, interlineations, erasions, cancellations, and new writings of words, phrases, or sentences were very numerous. The most significant of these, however, were the following: Upon the margin of each page of the will the deceased had written his name, and he had also written it as his subscription at the foot of the will. There were thus in all seven of his signatures upon the instrument. Each and all of these were canceled by two ink lines drawn through and across their full length. Upon the last page of the will, and under the signature of the attesting witnesses, appeared in the handwriting of the deceased the following: "Owing to the depreciation in my property I will make a new will." Some of the clauses in the will were canceled by ink lines drawn the full length of every line of the clause, and by cross lines extending from the top to the bottom. A legacy originally appearing in the typewritten instrument for two thousand dollars was changed twice. The "two" was canceled by two ink lines drawn through the word and the word "one" written in ink immediately over it. Again, the word "one" and the word "thousand" were canceled by a double pencil mark drawn through them, and over the word "one" was written in pencil the numeral "500." These identical changes appear more than once in the will.

Upon behalf of the proponents of the will, and those in interest with them, it was permitted to be shown, under the objection and exception of the contestants, that upon many occasions after the execution of the propounded instrument the deceased had declared that he had a will, an ironclad will. These declarations were shown to have been made as recently as fifteen days prior to his death, when he said to one Mrs. Woodward that he had a will, and that it was all right. Indeed, there is abundant evidence of many such declarations. They were objected to by the contestants as not having been made contemporaneously with the acts of cancellation, as being no part of the *res gestae,* and therefore not admissible upon the question of the intent with which the act of cancellation was done; but, as the judgment of the court passed in contestants' favor, and as the contestants are not here appealing, their objection to the introduc-

tion of this evidence may not be heard, and the question of its admissibility cannot be passed upon. The sole interest which the contestants have is in upholding the judgment, and for the correction of any errors made against them upon the hearing they must prosecute their own appeal. (*Klauber v. San Diego Street Car Co.*, 98 Cal. 105.) The case must be considered, therefore, upon this appeal in the light of all the evidence which the record bears.

The mode by which a written will, once executed, may be revoked is entirely governed by the provisions of the code. No will nor any part thereof may be revoked or altered otherwise than: "1. By a written will or other writing of the testator declaring such revocation or alteration, and executed with the same formalities with which a will should be executed by such testator"; or "2. By being burned, torn, canceled, obliterated, or destroyed, with the intent and for the purpose of revoking the same, by the testator himself, or by some person in his presence, and by his direction." (Civ. Code, sec. 1292.) It is with the revocation recognized by subdivision 2 that this case has to deal. As to the cancellations of clauses upon the face of the will, the striking out of some legacies and the changes in others, they are to be considered only for the light which they may throw upon the general act of revocation of the whole instrument for which respondents contend.

For the revocation contemplated by subdivision 2, two things are essential: 1. There must be a sufficient act within the meaning of the statute; that is to say, an act of burning, tearing, canceling, or otherwise destroying; and 2. That act must be performed *animo revocandi*, or, as our code phrases it, it must be performed "with the intent and for the purpose" of accomplishing a revocation. Thus, the mere physical destruction, however complete it may be, is not sufficient, for that may have been occasioned by mistake or fraud, or, as in the case of a testator who since the making of his will has become insane, it may be accomplished without any lawful intent whatsoever. Again, the mere intent, without some physical act tending to the destruction of the instrument, and sufficient to fill the requirement of the statute, for very obvious reasons is insufficient, since the law expressly requires the joint union of act and intent. What act of

destruction will supply the requirement of the statute is a question much discussed. It is apparent that the destruction may be total or partial. The will for example, may be wholly burned or totally obliterated, or it may be but partially destroyed, and still legible. Generally, it may be said that, if the intent to revoke clearly appears, a slight act within the statute will be deemed sufficient.

One of the recognized modes of revoking a will is by cancellation. In its primal significance the word means a lattice work. As applied to writings, it means the nullification of a writing by drawing upon its face lines in the form of a lattice work, "crisscross." Usually in legal as well as in common acceptance, cancellation is accomplished by the drawing of any lines over or across words with the intent to nullify them. It is common business practice to cancel negotiable instruments and other written contracts by drawing such lines through the signatures of the makers. Such was the method adopted in this case. It is a well-recognized method, as has been said, and one clearly within the letter and the spirit of the statute.

Where a will legally executed has been offered for probate, the *onus* is upon the contestants to prove its revocation. This burden the contestants bore, and showed the facts above narrated. From them it appears that the instrument during the lifetime of the maker had been in his secure possession; that when discovered it was found by members of the two parties in interest—by one of the contestants and by one allied with the proponents; that it was then in the same condition in which it appeared when offered at the hearing, with all the marks of cancellation upon it. From these circumstances alone arise the presumptions: 1. That the cancellations were the act of the testator; and 2. That they were performed with the intent and purpose of revoking the instrument. But it is said that acts of cancellation such as here disclosed are in their nature equivocal. This may be conceded. Indeed, the same is true of any act looking to the revocation of a will, even if it amount to total destruction, for to the act must always be added the intent to re before a compliance with the statute is had. In this insta: besides the facts and circumstances to which we have advert· the writings of the testator himself, found upon the enveϊ

containing the will, and appearing upon the last page of the will, furnish strong adminicular proof of this intent. There are upon the envelope, in the handwriting of the deceased, these words: "This has not been renewed up to this 15th day of October, 1895." There are upon the last page of the will these words: "Owing to the depreciation in my property I will make a new will." Neither these writings nor any of the writings of the testator, unless executed with all the formalities of a will, would be sufficient in and of themselves .to prove, nor would they be admissible primarily to prove, the basic fact of a revocation. But, the fact of revocation having been established by *prima facie* evidence, these contemporaneous declarations of the testator afford strong corroborative evidence upon the presumption of the intent with which the act of cancellation was performed. The declaration that "owing to the depreciation in my property, I will make a new will," affords a substantial reason for the revocation of the instrument. The words found upon the envelope support the proposition that the will of 1893 had been revoked, and further express the reason why the deceased, up to October, 1895, had not made a new will. Consequence is sometimes attached to the circumstance that the deceased retains amongst his valued papers an instrument which is contested as a revoked will. Under the circumstances presented in this case it seems quite natural that he should have done so— to use the old document, as indeed he appears to have been using it, as the foundation and framework for another testament.

Against all this appellants oppose the evidence of the oft-repeated declarations of the deceased, made down to a short time preceding his death, to the effect that he had a valid will. We have said that under the circumstances of this case respondent's objection that this evidence should not be considered, may not be heard. The question of its admissibility is not before us. The evidence is to be treated upon this appeal as properly in the case, but upon the subject of its admissibility reference may be had to Wharton on Evidence, third edition, section 895. Giving, then, to appellant's evidence all the weight to which it is entitled, what is to be said? Nothing further than at the most it presents a conflict upon an issue of fact which it was the peculiar province of the judge in probate, sitting without a jury, to decide.

It is further argued by appellants that the evidence discloses that the revocation was not absolute, but was dependent upon the making by the deceased of a new will, and, as it is not shown that he carried out his intention in this respect, the conditional revocation will be disregarded, and the old will restored to avoid intestacy. This is upon the doctrine designated by Mr. Jarman as the rule of "dependent relative revocations," and he thus states it: "Where the act of destruction is connected with the making of another will, so as fairly to raise the inference that the testator meant the revocation of the old to depend upon the efficacy of the new disposition intended to be substituted, such will be the legal effect of the transaction, and, therefore, if the will intended to be substituted is inoperative from defect of attestation or any other cause, the revocation fails also, and the original will remain in force." (I Jarman on Wills, 6th ed., c. 7, par. 7.) The dangers which lurk in the application of this doctrine have been well set out by Woerner in his American Law of Administration at page 90. But it is sufficient here to say that under no reasonable theory do the facts of this case bring it within the sweep of the doctrine.

The court found that the testator canceled and obliterated his will and his signature thereto and thereon "for the purpose of revoking the same." It is contended that this finding is insufficient; that it does not literally follow the language of the statute, "with the intent and for the purpose of revoking"—that a distinct meaning is to be given to the words as thus employed, and that it is therefore not a sufficient finding to say that the acts were done for the purpose of revoking. It would be extremely difficult to conceive of a testator canceling his will for the purpose of revoking it, and yet not canceling it with the intent to accomplish the same result. The truth of the matter is, that the use of the words is idiomatic. Their meaning as used is identical. They are as near approaches to perfect synonyms as may be found in the language. In discussing the statutes of Elizabeth, which declared a merchant to be a bankrupt who should "depart from his dwelling-house or houses to the intent or purpose to defraud or hinder any of his creditors," Lord Ellenborough very aptly said: "It will be observed that upon the language of this statute the act is complete by being done with

the intent specified, the words 'or purpose' being merely additional words to the same effect, and which carry the sense no further than it was carried by the preceding word *intent."* (*Robertson v. Liddell*, 9 East, 487.)

It is finally urged that the findings are insufficient because of the absence of a judicial declaration that the acts of revocation were done by the testator when he was of sound and disposing mind. To this it may be answered that the question of his sanity or mental competency was not made an issue. The court affirmatively finds that at the time he executed the will he was of sound and disposing mind. The presumption of sanity always exists until dispelled by proof. In this case the only evidence touching the question was that in the last week of his life he had become mentally infirm, as well as physically debilitated. But there is positively no evidence that the revocation was effected during that time, while, upon the other hand, the evidence of the testator's own writings upon the face of the will, and upon the envelope enclosing it, clearly indicate that the act was effectuated at a time long before.

The judgment and decree appealed from are affirmed.

Temple, J., and McFarland, J., concurred.