EDWARD THOMAS v. HIRAM M. THOMAS and Another.

May 17, 1899.

Nos. 11,339—(7).

## Will—Name of Beneficiary Altered after Publication—Revocation.

When the will of the deceased was proposed for probate it conclusively appeared that after the will had been published, the name of one of the beneficiaries (his son Edward) had been erased, and the name of his (Edward's) wife inserted in place of it; also that, if this erasure and alteration was made by the testator himself, it had never been published or authenticated, so as to make it effectual. The claim of the contestants was (1) that the erasure and alteration had been fraudulently made by the beneficiary Edward, or, (2) if made by the testator himself, the erasure revoked the devise in favor of Edward, and the devise in favor of the wife was ineffectual, because the will, as altered, was never republished. *Held*, that where a part of a will is canceled or erased by the testator himself, with a view, as in this case, to a new disposition of the property, and the proposed new disposition fails to be carried into effect for want of authentication, the presumption in favor of the revocation by the cancellation or erasure will be repelled, and the will as originally executed will stand, so far as it is practicable to ascertain what the original words were. In such case the proposed revocation will be deemed to have been conditional and dependent upon the efficacy of the new disposition intended to be substituted.

## Same—Parol Evidence.

In case of such conditional revocation, if the erased words cannot be ascertained from the instrument itself, parol evidence is admissible to prove what they were.

## Same—Fraudulent Alteration.

Also if the erasure and alteration were fraudulently made by the beneficiary Edward, this would avoid the provisions of the will in his favor; but, if made by a stranger, without his procurement, they would not avoid the will either in whole or in part, but it could be established and admitted to probate as executed.

## Same—Evidence.

Evidence considered, and *held*, that the court was justified in finding that the erasure and alteration were made either by the testator himself or by a stranger.

The probate court for Fillmore county, Farrington, J., made an order admitting to probate the will of Ezekiel Thomas, deceased, proposed by Edward Thomas, from which order Hiram M. Thomas and Gabrilla Colburn, who had filed objections to the allowance of the will, appealed to the district court of said county. The case was there tried before Whytock, J., who rendered judgment affirming the order of the probate court; and from an order denying a motion for a new trial, objectors appealed. Affirmed.

*H. S. Bassett* and *Wells & Hopp,* for appellants.

It is necessary for one who offers in evidence an instrument with alterations apparent on its face to explain how and when they were made, especially if it has been in his custody and he claims benefit under it. 1 Redfield, Wills, §§ 39, 40; In re Wilson, 8 Wis. 49; Bennett v. Sherrod, 3 Ired. (N. C.) 303; Wardner, Bushnell & Glessner Co. v. Willyard, 46 Minn. 531; Schroeder v. Webster, 88 Iowa, 627. When obliterations are complete, so that they cannot be made out by inspection of the will, it is a revocation of the obliterated parts, unless the obliteration was by accident or mistake, or by the unauthorized or fraudulent act of one not interested. The erasures constitute cancellation and obliteration within G. S. 1894, § 4430. 1 Bouvier, Law Dic. 536. The obliterations were complete. 1 Redfield, Wills, §§ 18, 19, 22; Gay v. Gay, 60 Iowa, 415; Bigelow v. Gillott, 123 Mass. 102; Graham v. Burch, 47 Minn. 171; 1 Jarman, Wills (6th Ed.) 150; In re Ladd's Will, 60 Wis. 187. Extrinsic evidence is not admissible to show what was obliterated. This must be determined by inspection. 1 Redfield, Wills, § 22; 1 Jarman, Wills (6th Ed.) 150. The question is not for expert testimony. Gay v. Gay, supra.

When a will is found mutilated after testator's death and has last been in his custody, this is prima facie evidence that the mutilation was by the testator with intent to revoke. 1 Redfield, Wills, §§ 8, 53; North, Prob. Prac. § 74; 1 Jarman, Wills (6th Ed.) § 10. The complete obliteration of the name of Edward, so that it could not be made out, constituted a revocation, whatever might have been the intention, so long as it was not a mistake or accident, or brought about by the fraud of Edward. North, Prob. Prac. §§ 63–

65; Gary, Prob. Law, §§ 156–158; 1 Redfield, Wills, §§ 18, 19, 22, 312, 313; Bigelow v. Gillott, supra; Gardiner v. Gardiner, 65 N. H. 230; Gay v. Gay, supra; Graham v. Burch, supra; In re Ladd's Will, supra. An obliteration so complete that the words cannot be deciphered is, however, a destruction of the instrument as such, and a revocation follows, wholly or pro tanto. Lawson v. Morrison, 2 Hare & W. Lead. Cas. 500, note.

When there is nothing to explain obliterations and interlineations appearing on the face of a will, it will be presumed that they were after execution. North, Prob. Prac. § 63; Gary, Prob. Law, § 158; 1 Redfield, Wills, §§ 23, 39, 54, 324; 1 Jarman, Wills (6th Ed.) 151, 152; Graham v. Burch, supra. The evidence shows that the alterations were made by proponent fraudulently and for his benefit. The presumption being that the erasure and alteration were made after execution, the burden is on him to show when, how, by whom, and with what intent such alteration was made. 1 Redfield, Wills, § 9; Gary, Prob. Law, §§ 54, 158; Peake v. Jenkins, 80 Va. 293; In re Wilson, supra; Seebrock v. Fedawa, 30 Neb. 424; Wardner v. Willyard, supra. Where a mutilated will is found in the control of one to be benefited by its revocation or alteration, the presumption is that the alteration was made by him. Bennett v. Sherrod, supra; In re Wilson, supra; Bigelow v. Gillott, supra; Gary, Prob. Law, § 158; Jackson v. Malin, 15 Johns. 293. A material and unauthorized alteration of a will by a party in interest avoids the will as to him. 1 Redfield, Wills, § 43; Gary, Prob. Law, § 158; Blade v. Noland, 12 Wend. 173; Lewis v. Payn, 8 Cow. 71; In re Wilson, supra; Bennett v. Sherrod, supra; Jackson v. Malin, supra; Thornton, Lost Wills, §§ 65, 94, 95; Waring v. Smyth, 2 Barb. Ch. 119. The rights of innocent parties are not affected. Wardner v. Willyard, supra; Russell v. Reed, 36 Minn. 376; Coles v. Yorks, 28 Minn. 464. Every presumption is against the spoliator. Wardner v. Willyard, supra; Schroeder v. Webster, supra; Robinson v. Reed, 46 Iowa, 219. Where the testator, or a person interested, or a stranger fraudulently makes an erasure rendering a portion of the will illegible, the illegible parts will be treated as blanks and probate will be allowed. North, Prob. Prac. §§ 63–65;

Gay v. Gay, supra; Bigelow v. Gillott, supra; Gardiner v. Gardiner, supra; 1 Redfield, Wills, § 22; Graham v. Burch, supra.

*Gray & Thompson*, for respondent.

MITCHELL, J.

Ezekiel Thomas, of Fillmore county, in this state, died testate January 12, 1891, leaving, surviving him, a widow, Mary A., and four children, viz. Edward Thomas, the proponent, Hiram M. Thomas and Gabrilla Clark (now Colburn), the contestants, and John Thomas. On October 15, 1891, Edward Thomas proposed to the probate court as the last will and testament of the deceased an instrument dated June 4, 1888, the material provisions of which, after bequeathing and devising certain personal and real property to his wife for life, were as follows:

"Third. The rest, residue, and remainder of my estate, both real and personal, I give, devise, and bequeath equally, share and share alike, unto my children Hiram M. Thomas, Gabrilla Clark, nee Thomas, and Abbie Thomas.

"Fourth. At the date of the death of my wife I do hereby devise and bequeath, and it is my will, that all the property hereby bequeathed and willed to her be equally divided, share and share alike, between my children Hiram M. Thomas, Gabrilla Clark, nee Thomas, and Abbie Thomas."

Edward Thomas was named as executor. Abbie Thomas was not the daughter, but the daughter-in-law, of the testator, being the wife of the proponent, Edward.

The contestants interposed certain objections to the probate of the proposed instrument, among which were the following: (1) That after the death of the testator the proponent fraudulently altered the will by erasing and obliterating some other name whenever the name "Abbie" now appears, and writing in place thereof the word "Abbie." (2) Or, in case said alterations were not made since the death of the testator, then they were made by the testator himself, and the erasure revoked the devise and legacy to the person whose name was erased, but that the act of substituting the name "Abbie" was null, and inoperative, because the alteration or addition was never authenticated as required by statute. They

therefore consented that the name Abbie should be stricken out, but objected to the restoration of the name of any other person in place thereof. The probate court made an order or decree adjudging that the proposed instrument was the last will and testament of Ezekiel Thomas,

"Except that since the execution of said will the name of Edward Thomas has been erased, and the name of Abbie Thomas inserted therein, as one of the legatees and devisees of said deceased."

And ordering and adjudging

"That the name Abbie Thomas is not properly in, or a part of, said will, and that said instrument be, and hereby is, corrected and reformed by restoring the name of Edward Thomas in lieu and instead of the name Abbie Thomas wherever it occurs in said will, and that the same, as corrected, be, and hereby is, established and allowed as the last will and testament of said Ezekiel Thomas, deceased, and that the same hereby is admitted to probate."

From this decree the contestants appealed, and, after trial de novo on the merits, the district court rendered judgment ordering and adjudging

"That the order and judgment of the probate court * * * admitting the will of Ezekiel Thomas to probate be, and * * * is, in all things affirmed, and the will of Ezekiel Thomas, as proven, allowed, and established by the probate court is hereby declared to be the last will and testament of said Ezekiel Thomas."

Neither the probate nor the district court made any findings of fact other than those contained in their respective judgments, and none were asked for by either party. Hence it must be assumed that the court found each and every fact necessary to support the judgment.

The evidence was conclusive that when the will was executed and published by the testator it contained the word "Edward" in both places where the word "Abbie" now appears, and that it did not contain the word "Abbie" at all; also, if the alteration was made by the testator himself, it was never authenticated or published, as required by the statute, so as to render it operative. Hence the court, in rendering the judgment which it did, must have found either (1) that the erasure and alteration was made by the testator

76 M.—16

himself, and that, as the alteration or addition in favor of Abbie was void for want of due authentication, it did not constitute a revocation of the devise and legacy in favor of Edward; or (2) that the erasure and alteration was made by some third party, and not by Edward, and hence did not affect the provisions of the will in his favor. If the judgment is sustainable on either ground, it must be affirmed.

The general rules of law applicable to the case are as follows: Where a portion of a will is cancelled or erased by the testator with a view to a new disposition of the property, and the proposed disposition fails to be carried into effect, the presumption in favor of a revocation by the cancellation will be repelled, and the will will stand as originally framed, so far as it is practicable to ascertain what the former words were. Or, as sometimes stated, when words or clauses are cancelled in order to substitute others, which fail for want of due authentication, the cancellation will be treated as relative and dependent upon the efficacy of the new disposition intended to be substituted; and hence, if the disposition intended to be substituted is inoperative, the revocation fails also, and the original will remain in force. This is based upon the presumption that the testator made the cancellation with the view and for the purpose of putting some other disposition of his property in place of that which is cancelled, and that there is therefore no reason to suppose that he would have made the change if he had been aware that it would have been wholly futile, but that his wishes with regard to his property, as expressed in his original will, would have remained unchanged in the absence of any known and sufficient reason for changing them. In re Penniman's Will, 20 Minn. 220 (245), and authorities cited.

This rule is entirely applicable to the facts of this case (assuming that the testator himself made the alteration), where he clearly intended to substitute a devise and bequest to Edward's wife for a similar one to Edward himself. It is not to be presumed that he would have revoked the devise to Edward except upon condition that the substituted one to his wife should be effectual. But it is urged that this rule is subject to the condition that the words attempted to be cancelled or erased still remain legible in the will,

so that they can be ascertained from the paper itself without resort to parol evidence; and much evidence was introduced on the trial of this case, with the aid of glasses and experts, as to whether the word "Edward" was still legible under the word "Abbie."

The text-books sometimes state the law to be as contended for by the contestants. The same statement is to be found in some of the adjudicated cases, but in every case which we have found the words cancelled or erased were still legible, and hence the statement was mere dictum. In some of the cases the courts, as in the Penniman Will case, state, apparently ex industria, that the words were still legible, but make no allusion to that fact in discussing the law of the case. We have never seen any reason given for attaching any such limitation or condition to the rule, and none has occurred to our minds. It seems to us that the presumption as to the intention of a testator, upon which the rule already referred to is based, is just as strong when the words cancelled or erased are wholly illegible as where they can still be read by an expert with the aid of a glass. Neither does the use of parol evidence to prove what the cancelled or erased words were violate either the provisions of the statute of frauds or the rule that parol evidence is inadmissible to vary the terms of a written instrument. Nor can we discover anything in the statutes relating to the execution or the revocation of wills which requires any distinction to be made between a cancellation or erasure which renders the words wholly illegible and a cancellation or erasure which leaves the words still capable of being ascertained from an inspection of the document.

Another rule of law applicable to this case is that if these erasures and alterations were made by some third party, without the procurement of the proponent, they would not avoid the will, either in whole or in part, but the will might be proved and established as executed. A third rule is that, if the erasures and alterations were fraudulently made by the proponent, or by his procurement, they would avoid the provisions of the will in his favor, and the will should have been admitted to probate with the places where the name was erased left blank. This rule is established "in odium spoliatoris."

The evidence is to the effect that from the time the will was exe-

cuted, in June, 1888, until his death, in January, 1891, the testator retained possession of the will, and kept it under lock in a desk in his bedroom, and that he carried the key of the desk. So far as appears, the first member of his family who knew of the existence of the will was his wife, whom he told shortly before his death where she would find it in the desk, in case of his death. The family consisted of the testator and his wife, Mary, his son Edward, and his wife, Abbie, and a grandson. These continued to reside in the house up to the time the will was presented for probate; and during all that time the will was kept in the desk, the key to which was left in another drawer of the same desk, so that, apparently, any member of the family could have had access to the will. Shortly after his father's death, the proponent and his wife moved into and occupied as their bedroom the room in which the desk was. The disinherited son, John, and his wife, Jessie, came from the West shortly after the testator's death, and remained in the house some ten days or more. During that time, and about January 23, the will was taken out of the desk by the widow for the purpose of being read to or by the members of the family. So far as appears, this was the first time any of them had seen it.

According to the testimony of Edward, it was read aloud by him, and then passed to John to read. According to Edward, he and John and his mother were the only persons present at this time. According to John and his wife, Jessie, the latter was also present, and read it; and in this they seem to be corroborated by the grandson, who was called as a witness by Edward. John and his wife both testified positively that they both read the instrument at that time, as well as heard it read, and that it contained the name of Edward in both places where the word "Abbie" now appears, and that there were no erasures. The mother testified that she did not remember and could not tell whether the name of Edward or of Abbie was then in the will. Abbie, the proponent's wife, was not called as a witness. Edward testified that the will was in the same condition as now, and contained the name "Abbie" as one of the beneficiaries; but the weight of his evidence is somewhat impaired by the somewhat indefinite and vague character of his answers, on cross-examination, as to matters about which he would naturally

be quite positive, and his admission, in substance, that the fact of the existence of the erasures, and that his name was omitted from the will, and his wife made a beneficiary, elicited neither surprise, comment, nor inquiry on his part. He testified that he did not write the word "Abbie," that it was not in his handwriting, and that he did not know whose it was. Aside from this, there was no evidence introduced by either side as to whose handwriting the word "Abbie" was. Neither party attempted to prove that it was or was not that of the testator.

On January 26, in writing to his brother Hiram, who lived West, Edward, after stating what provision the will made for his mother, added, "There will be 190 acres to be divided between you, Gabrilla and myself," and made no reference to his wife, Abbie, being one of the beneficiaries. About February 16, Edward, at the request of Hiram, sent the latter a copy of the will. In making this copy, Edward wrote it as read aloud to him by his wife, Abbie. This copy contains the name of Edward, and not of Abbie, as one of the beneficiaries of the will. The reason assigned by Edward why he inserted his own name instead of his wife's was that when they came to that part of the will she requested him to do so. The testimony of the probate judge was to the effect that when the will was presented to him by Edward he observed the erasures, and called Edward's attention to the fact, to which the latter made no response. Also that the word "Abbie" seemed fresher than the balance of the instrument. It appeared that at the time of the death of the testator, and up to a time subsequent to the presentation of the will for probate, there were two or three unsatisfied judgments against Edward; and the suggestion of the contestants is that the motive of Edward in making the alteration was to prevent these judgments from becoming a lien on the land devised to him.

This statement of the evidence is not complete, but is sufficient to give a fair idea of its probative force. We confess that it seems to us that the preponderance of the evidence, largely circumstantial, was against the proponent, and in favor of the conclusion that he himself intentionally made the erasures and alterations. But it was not conclusive, especially in view of his own testimony. If

the court believed his testimony, then it was justified in concluding that the erasures and alterations were made by the testator in his lifetime; for where a will has remained in the possession of the testator from the date of its execution until his death, and is then found, among his papers, with erasures or alterations, the presumption is that they were made by himself. Or, again, even if the court did not find that the erasures and alterations were made by the testator, it might have found, if it believed the proponent's testimony, that they were not made by him, or by his procurement, but by some third party. Inasmuch as to find that the proponent made them would have resulted in his forfeiting all benefits under the will, and would, in effect, amount to finding him guilty of the crime of forgery, the evidence ought to be quite clear and satisfactory in order to justify such a finding. In view of all these considerations, we cannot say that the findings were so manifestly against the weight of the evidence that it was an abuse of discretion on the part of the trial court to refuse to grant a new trial.

Order affirmed.