IN THE MATTER OF THE ESTATE OF BARBORA HAVEL, DECEASED.
ROSIE JOHNSON AND VALENTINE JOHNSON v. MARIE KROC, ANNIE JESEK, ANTON HAVEL AND JOSEPH HAVEL.[1]

July 6, 1923.

No. 23,478.

**Physical existence of lost will at testator's death not requisite to its allowance.**

Section 7280, G. S. 1913, with other applicable statutory provisions, construed, and *held* not to demand, in order to admit to probate a lost or destroyed will, that the same should have been in physical existence at the testator's death. Existence of the will in contemplation of law, unrevoked, is all that is required.

Marie Kroc, Annie Jesek, Josef Havel and Anton Havel, children of Barbora Havel, deceased, filed objections in the probate court for Hennepin county to the admission to probate of the last will and testament of their mother. From an order, Dahl, J., admitting the will to probate, the objectors appealed to the district court for that county where the appeal was heard by Waite, J., who found that the will was not entitled to probate and remanded the cause to the

[1]Reported in 194 N. W. 633.

probate court. From an order denying their motion for a new trial Rosie Johnson, proponent of the will, and her husband, Valentine Johnson appealed. Reversed.

*Healy & Peterson*, for appellants.

*Moritz Heim* and *Thompson, Hessian & Fletcher*, for respondents.

STONE, J.

Barbora Havel departed this life November 9, 1920, 5 days after she had made a will as to the testamentary efficacy of which no doubt has been expressed by either the probate or district court. The decision appealed from was against admitting the will to probate. It was put upon the sole ground that the document was not shown to have been in physical existence at the death of the testatrix. The learned trial court was of the opinion that such existence at the moment of the testator's death is necessary in order to admit to probate a lost or destroyed will, even though the same remains unrevoked and is susceptible of the clear and distinct proof required by law.

The controlling statute, section 7280, G. S. 1913, is as follows:

"No such will shall be established unless the same is proved to have been in existence at the time of the testator's death, or to have been fraudulently destroyed in his lifetime, nor unless its provisions are clearly and distinctly proved by at least two credible witnesses."

The sole question is, does this section require physical existence of the document at the moment of the testator's death—or is existence in contemplation of law, without the coexistence of the paper and writing, all that is demanded?

The question is entirely new in this court. Re Cunningham, 38 Minn. 169, 36 N. W. 269, 8 Am. St. 650, and Re Ellis Estate, 55 Minn. 401, 56 N. W. 1056, 23 L. R. A. 287, 43 Am. St. 401, do not help us. It is one purely of statutory construction and bristles with difficulty. There are three pertinent sections of the statute, sections 7256, 7279 and 7280, G. S. 1913. All of them in substance were a part of the Probate Code, first enacted as chapter 46, Laws 1889, and re-enacted, in their present form, in R. L. 1905.

Section 7256 is for the most part (entirely so far as we are now concerned with it) a statement of the substantive law concerning the revocation of wills. It is as follows:

"No will in writing, except in the cases hereinafter mentioned, shall be revoked or altered otherwise than by some other will in writing, or by some other writing of the testator, declaring such revocation or alteration, and executed with the same formalities with which the will itself was required by law to be executed; or unless such will be burnt, torn, canceled, obliterated, or destroyed with the intent and for the purpose of revoking the same, by the testator himself, or by another person in his presence, by his direction and consent; and when so done by another person the direction and consent of the testator, and the fact of such injury or destruction, shall be proved by at least two witnesses; but nothing in this section shall prevent the revocation implied by law from subsequent change in the condition or circumstances of the testator."

This is the older statute. It. was section 9, chapter 47, of the Statutes of 1878, and section 10 of chapter 40, Statutes of 1849-1858. The other two sections were first enacted as a part of the law of 1889. As to relative date of enactment, the latter have the advantage in case of conflict. However, as above indicated, all three sections were re-enacted as parts of R. L. 1905. Since 1889, they have coexisted in pari materia and without any suggestion until now of disagreement or conflict.

But, if physical existence of the document is required by section 7280, there is a direct and mystifying conflict between it and section 7256; for the latter very clearly implies that a will may remain in effect, unrevoked, although it has been accidentally lost or destroyed, or otherwise disposed of without intent to revoke.

In a narrow and technical view, there can be no conflict between sections 7256 and 7280 because in a sense they relate to different subjects; the former, to the substantive law of revocation, and the latter to the procedure for establishing a lost or destroyed will. But if section 7280 is construed to require physical existence of the document at the moment of the testator's death, there is flagrant conflict with the plain meaning and intended result of section 7256.

As to *results*, then, section 7280 being given the construction suggested, the two sections are hopelessly in conflict. If there is a permissible construction of either section that will avoid such conflict it should be adopted.

Section 7279, G. S. 1913, which opens the subject of lost and destroyed wills, and deals with the manner in which they may be admitted to probate, provides first for a petition concerning "a lost or destroyed will." It does not refer only to a will destroyed after the death of the testator. Moreover, the probate court is directed to "take testimony as to the execution and validity" of such "lost or destroyed will;" and it is significant that there is no direction for proof as to the *time* of loss or destruction, with respect to the death of the testator or otherwise.

Then comes section 7280, consisting entirely of negative provisions, particularly the one preventing the establishment of the lost or destroyed will, "unless the same is proved to have been in existence at the time of the testator's death, or to have been fraudulently destroyed in his lifetime." Had the disjunctive phrase concerning fraudulent destruction "in his lifetime" been omitted, there would be no difficulty in reaching the conclusion that existence in legal effect, as distinguished from the existence of the paper and writing, is all that the legislature intended to demand. The fraudulent destruction clause makes that result difficult. Either it negatives the legislature's intention, so carefully expressed in section 7256, to prevent revocation by accidental loss or destruction, or it must be considered as surplusage. A holding making that clause surplusage is less objectionable, however, than one which will read into another section of the statute language which is not there and produce an effect not only beyond, but opposed to, the legislative intention there expressed.

We prefer a decision, which will render surplusage the fraudulent destruction clause of section 7280, to one which will permit, contrary to the provisions of section 7256, the practical revocation of a will by loss or an unintentional destruction.

Therefore section 7280 is construed not to require physical existence of the will at the time of the testator's death in order to per-

mit its probate, in the manner indicated, as a lost or destroyed will. Its continued legal effect, unrevoked, is all that is required. Such holding renders section 7280 consistent with section 7256; and the liberty thus taken with the statute is much less than it would be if the other view were adopted, for in the latter case section 7256 would be seriously impaired.

An important circumstance is that section 7280, if it requires physical existence at the death of the testator, changes the common law. Such changes are ordinarily expressed in clear language. For the rule at common law, see Gaines v. Hennen, 65 U. S. 553, 562, 16 L. ed. 770; Dower v. Seeds, 28 W. Va. 113, 57 Am. Rep. 646.

Another consideration confirming our conclusion, is the fact that any other would have a disastrous effect upon the doctrine, now well established, of dependent relative revocation. From beginnings long antedating our probate code, it has been the law that if a testator cancels or destroys a will with a present intention of making a new one *immediately and as a substitute*, and the new will is not made, or, if made, fails of effect for any reason, it will be presumed that the testator preferred the old will to intestacy, and it may be allowed probate in the absence of evidence overcoming the presumption. Dunnell, Minn. Probate Law, § 223. Re Penniman's Will, 20 Minn. 220 (245); Thomas v. Thomas, 76 Minn. 237, 79 N. W. 104, 77 Am. St. 639; Board of Co. Commrs. of Rice County v. Scott, 88 Minn. 386, 93 N. W. 109. These cases show the doctrine well established here. It is equally the law in other jurisdictions. McIntyre v. McIntyre, 120 Ga. 67, 47 S. E. 501, 102 Am. St. 71, 1 Ann. Cas. 606; In re Thompson, 116 Me. 473, 102 Atl. 303; Re Marvin's Will, 172 Wis. 457, 179 N. W. 508; Hartz v. Sobel, 136 Ga. 565, 71 S. E. 995, 38 L. R. A. (N. S.) 797, Ann. Cas. 1912D, 165. See also 40 Cyc. 1188; 28 R. C. L. 182; 22 Harvard L. Rev. 374.

This doctrine was in existence at the adoption of our Probate Code. If it was the legislative intent to limit its application to cases where the conditionally revoked will was not destroyed, such limitation would not have been left to the mere inference to be drawn from section 7280, standing alone, that physical existence

of the document, at the testator's death, was necessary in order to admit to probate a lost or destroyed will.

Of course our procedure for the probate of wills is a creature of statute and may be altered at the pleasure of the legislature. In view of the opportunity for fraud in the proof of lost or destroyed wills, it would be entirely competent for the legislature to prescribe that a will, in order to be admitted to probate, would have to be in physical existence at the testator's death. The further the law is extended in admitting lost or destroyed wills to probate, the greater will be the opportunity for fraud in attempts to establish spurious wills.

On the other hand, it is just as clear that the more possible it is made for designing persons to destroy or secrete them, the more there is going to be, under circumstances not susceptible of proof, of fraudulent destruction and secretion of wills. The argument of expediency seems to be strongly in favor of admitting to probate wills lost or destroyed before, as well as those lost or destroyed after, the death of the testator.

No better illustrative case on this score can be found than the one now before us. Mrs. Havel made her will on November 4. She died on November 9. Her original will was in Bohemian. Immediately, and to take its place, an English translation was prepared, which she signed. The English will could not be admitted to probate because, and only because, the witnesses did not sign in the presence of the testatrix and of each other. Notwithstanding that, it was conclusive evidence that the intention expressed in the Bohemian will was the final testamentary intention of the testatrix. The two wills were not in the custody of the testatrix after they were signed by her. Through agencies now unknown, the Bohemian will disappeared on the very day of its execution. There is no reason to suppose that in the few days intervening before her death the testatrix changed her mind and wanted to die intestate. By its construction of section 7280, the district court reluctantly reached a result not intended by the testatrix.

Many similar cases can be imagined. Many wills, even in these days of fireproof safes and vaults, may be mislaid or destroyed.

And the loss may be unknown to the testator, or if known, may not be made good before his death. Wills may be lost through the carelessness of custodians. They may be destroyed in wholesale manner as was the case in the San Francisco fire. There, by the way, there was a special act of the legislature providing for the proof of wills destroyed by public calamity. See In re Estate of Patterson, 155 Cal. 626, 102 Pac. 941, 26 L. R. A. (N. S.) 654, 132 Am. St. 116, 18 Ann. Cas. 625.

Because, therefore, it seems more consistent with the legislative intent, when all applicable sections of the statute are considered; because it leaves intact the well established doctrine of dependent relative revocation; and because, as to result it seems more just, we have adopted the view that section 7280 should not be considered as requiring physical existence of the document, at the time of the testator's death, prerequisite to the admission of the will to probate as a lost or destroyed will.

The problem should not be confused with those arising from rules of evidence and difficulties of proof. For example, it has been suggested that section 7256 cannot be construed as intending to preserve, as valid, wills that could not upon any evidence be established. The answer is that section 7256 intends to prevent revocation except in the cases there enumerated, and has nothing whatever to do with difficulties that may arise, in a given case, in proving an unrevoked but lost or destroyed will. Many cases can be imagined where, because of lack of evidence, an unrevoked will cannot be proven. Such considerations are extraneous to the statute and arise, not from any language used by the legislature, but from peculiar difficulties of particular cases, real or imaginary.

Neither is the decision of the question in any way involved with the presumption arising from the possession of a will by the testator and the fact that it cannot be found after his decease. In such a case the presumption is that the will was destroyed by the testator, animo revocandi. See Schultz v. Schultz, 35 N. Y. 653, 655, 91 Am. Dec. 88; Newell v. Homer, 120 Mass. 277, 281.

The decisions in other states are not harmonious. The weight of authority may be against the view here expressed, if result alone is

considered. Some of the cases proceed without any attention to a statute of revocation such as ours. Estate of Kidder, 57 Cal. 282; Todd v. Rennick, 13 Colo. 546, 22 Pac. 898. Others construe statutes more explicit than ours. In re Sinclair's Will, 5 Oh. St. 291; Rich v. Gilkey, 73 Me. 595; Kellogg v. Ridgely, 161 Ind. 110, 68 N. E. 929. In still other cases the ultimate and real decision was based upon the peculiar facts of the case, or upon some other statute. In re Estate of Patterson, supra; Grant v. Grant, 1 Sand. Ch. (N. Y.) 235; Schultz v. Schultz, supra.

The most cogent argument which has been advanced against our conclusion is that our statute was taken from New York and that the construction there is the other way. See Grant v. Grant, supra, Knapp v. Knapp, 10 N. Y. 276, Timon v. Claffy, 45 Barb. 438; Voorhis v. Voorhis, 50 Barb. 119.

But we consider that argument overborne by the necessity of maintaining intact our statute of revocation, G. S. 1913, § 7256, and the other considerations above noted.

The order appealed from is reversed and the case remanded for further proceedings consistent with this opinion.