IN RE ESTATE OF JOHN NELSON.
KIRSTEN WENSTOB, APPELLANT.[1]

May 1, 1931.

No. 28,363.

[1]Reported in 236 N. W. 459.

*Arctander & Jacobson,* for appellant.
*Paul J. Marwin,* for respondent.

WILSON, C. J.

Appellant appealed from an order denying her motion for a new trial.

John Nelson made his will on November 14, 1924, and therein devised and gave a portion of his estate to the appellant, who was then his nurse and housekeeper. He left the will in the custody of his lawyer. Early in August, 1927, at the written request of Nelson, the lawyer delivered the will to Carl P. Johnson, Nelson's son-in-law.

Mr. Nelson was then an old gentleman and had been blind since 1922. His wife died in 1914. Mrs. Johnson, who was an adopted daughter of Mr. and Mrs. Nelson, died July 30, 1921. The Johnsons lived in the Nelson home from 1909 to 1913, from 1914 to 1920, and from September 3, 1927, to December 28, 1928, when Mr. Nelson died. Mrs. Johnson was adopted by Nelsons, and Ethelyn Irene Johnson, a minor daughter of the Johnsons, is Mr. Nelson's sole heir at law. During the times when Johnsons did not live in the Nelson home, they saw Nelson practically every Sunday and at times during the week. The granddaughter devoted much time and attention to Mr. Nelson.

Miss Kirsten Wenstob, the appellant, came to Mr. Nelson's home about July 19, 1924, and remained there until September 3, 1927. When the will was made he was pleased with appellant and named her as beneficiary in the will. Later he was not so well pleased with her, and he wished her to leave his home. She did so.

The will contained the names and addresses of over 40 beneficiaries who were given small amounts and covered most of the three first pages of the will. After Mr. Johnson procured the will from the lawyer he advised Mr. Nelson's neighbor, E. W. Walker, that Mr.

Nelson desired to destroy his will, and apparently for the purpose of being a witness thereto Mr. Walker came to the Nelson home. Mr. Nelson, Mr. Walker, and Mr. Johnson were there, and Mr. Walker asked Mr. Nelson if he was going to destroy his will. Nelson said, "yes." Walker asked if he was doing it of his own free will, and Nelson said, "I am." For reasons not here important Mr. Nelson and Mr. Johnson desired to save the list and addresses of the beneficiaries named on the first three pages. Johnson folded back these pages and then he folded the last page with the testator's signature, and he tore that sheet "half way down" so Mr. Nelson could take hold of it, and Mr. Nelson then "took it and tore the signature off and crumpled it up." Nelson crumpled the balance of the will, except the first part with names and addresses which Mr. Johnson saved, and gave it to Johnson and told him to burn it. Johnson says that he took this portion home and burned it.

The claim is that the evidence is insufficient to prove revocation; that the alleged revocation does not comply with the statute; and that the alleged acts of destruction would constitute no more than a "dependent relative revocation."

■ Appellant's claim that the evidence is insufficient to prove revocation rests largely upon the fact that the testator was blind, and it is claimed that the law requires great care on the part of those who are assisting a blind man under the disclosed circumstances. It is the law that such persons must use care and caution commensurate with the infirmities of the testator in order to protect him from either deception or mistake. The record however fails to indicate that the trial court did not apply this rule, and the evidence is sufficient in the light of the rule to support the finding of revocation.

■ G. S. 1923 (2 Mason, 1927) § 8741, provides that no will in writing shall be revoked or altered "unless such will be burnt, torn, canceled, obliterated, or destroyed, with the intent and for the purpose of revoking the same, by the testator himself, or by another person in his presence, by his direction and consent; and when so done by another person the direction and consent of the testator,

and the fact of such injury or destruction, shall be proved by at least two witnesses."

We need not discuss the question as to whether the direction and consent was proved by two witnesses. There is no question but that the fact of destruction was proved by two witnesses. Revocation rests upon intent, and it is sometimes described as an act of the mind which must be demonstrated by some outward and visible sign of revocation. We are of the opinion that upon the facts as above stated the tearing and destroying of this particular will supports the conclusion that it was done with revocatory intent and that the will was revoked by the testator's own acts. The testator declared his intention to destroy the will. He intentionally tore off the signature. This should constitute a revocation. 40 Cyc. 1191.

We construe the record as disclosing an absolute and unqualified revocation with no room for the claim that the conduct constituted merely a "dependent relative revocation." The testator must have known that there was nothing left of the old will. He lived for more than a year thereafter but never made a new will. The circumstances simply do not bring the case within the doctrine of "dependent relative revocation." 28 R. C. L. p. 182, § 141; Thomas v. Thomas, 76 Minn. 237, 79 N. W. 104, 77 A. S. R. 639; Strong's Appeal, 79 Conn. 123, 63 A. 1089, 6 L.R.A.(N.S.) 1107, 118 A. S. R. 138; Estate of Olmsted, 122 Cal. 224, 54 P. 745; 40 Cyc. 1188; Reppy & Tompkins, History of Wills, 39; 1 Schouler, Wills (6 ed.) §§ 632-637; 1 Page, Wills (2 ed.) § 449, et seq; 1 Woerner, Am. Law Adm. (3 ed.) p. 133. In re Estate of Havel, 156 Minn. 253, 194 N. W. 633, 34 A. L. R. 1300, does not involve the doctrine of "dependent relative revocation."

Where the circumstances connected with the revocation are such as to raise the inference that the testator meant the revocation of the old to depend upon the efficacy of the new disposition intended to be substituted, such will be the legal effect of the transaction; and, if through lack of formality or otherwise the intended new will is inoperative, the revocation fails and the original will remains in force. Revocations ordinarily included within the doctrine of "de-

pendent relative revocation" are properly either conditional revocations or revocations made under mistake. Reppy & Tompkins, History of Wills, 39; Estate of Olmsted, 122 Cal. 224, 54 P. 745. Of course where the revocation is not absolute but is dependent upon the making by the testator of a new will, the doctrine will protect the old will if the relative act proves futile.

Affirmed.