IN RE ESTATE OF BARBARA LADMAN.
JAMES LADMAN, APPELLEE, V. MARY LOGAN ET AL., APPELLANTS.

FILED MARCH 1, 1935. No. 29116.

*Guy A. Hamilton* and *E. J. Steinacher,* for appellants.

*Waring & Waring* and *Sloans, Keenan & Corbitt, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and MUNDAY, District Judge.

MUNDAY, District Judge.

Barbara Ladman was born in Bohemia and came to America when a child, and later married John Ladman. Five children were the issue of this marriage, all of whom are living. After the marriage they lived on 80 acres of land in Fillmore county, and title of this was in the husband's name. Some time later a quarter-section of land was purchased in Saline county and title to this land was taken in the name of the wife. In about 1895 the husband and wife were unable to live peaceably together and separated and remained separated until her death on December 26, 1932. They were never divorced. At the time of the separation the husband and wife conveyed by deed their interest in the land in Fillmore county to their son Joseph, but a life estate was reserved therein to the husband. The wife with four children then moved to the land in Saline county, and later the children left and went to do for themselves. After the children left her, the wife purchased a house in Milligan, Nebraska, and lived there a greater part of the time until her death. After the husband and wife separated, he lived on the land in Fillmore county for a short time and later with a relative, and in 1913 the husband went to Montana, where he located on a homestead and lived with his son James. About a month before the wife's death, she was seriously ill and all the children came to visit her except one son. At that time the wife, Barbara Ladman, sent for Charles Smrha, her local banker, and asked him to draw her will and gave him instructions as to how it should dispose of her property. In pursuance of these instructions, Mr. Smrha drew the will in English on a printed form, and there is no contention but that it was executed as provided by law. The will

was then delivered to the Farmers & Merchants Bank of Milligan for safe-keeping. Mr. Smrha then prepared a statement of the contents of the will in the Bohemian language and left this statement with Mrs. Ladman. There is no contention in this case that Barbara Ladman was not competent to direct the making of her will.

A day or two after the will was made and when she had learned that some court proceedings would be necessary to probate the will, Mrs. Ladman again talked with Mr. Smrha and asked that a different disposition of her property be made. Mr. Smrha then suggested a new plan for disposal of her property and drew a contract for her and the children to sign. This contract was then signed by Barbara Ladman and all of her children save the one who was not present, and one of the other children signed for him. Mr. Smrha then destroyed the will by tearing or burning the same. No other or different will was ever written for her or found by any one among her effects.

In April, 1933, the son, James Ladman, filed a petition in the county court for the settlement of his mother's estate, and alleged therein that she died intestate. A day was set for hearing of this petition and legal notice given. At the hearing of this petition in the county court the children, Emil and Anna, appeared and objected to the petition filed by James, and alleged that their mother did not die intestate, but that she died testate and that her will was lost. The county court heard the evidence on May 2, 1933, the day set for hearing of said petition, and found from the evidence and decreed that Barbara Ladman died intestate. From this decision an appeal was taken to the district court, where a trial was had to a jury. After the introduction of all the evidence the court on motion peremptorily directed the jury to return a verdict that Barbara Ladman died intestate. In the district court a sister, Mary Logan, joined with Emil and Anna Ladman, and the three are now appellants in this court. The father and the children, John, Joseph and James Ladman, with the administrator, are appellees.

The appellants assign many errors on the part of the trial court, but only a small number of these were really considered and presented. They contend: (1) That the county court had no jurisdiction to hear the petition because it did not publish notice for the probate of the alleged lost will; (2) that the alleged revocation does not comply with the statute; (3) error in exclusion of declarations of the testatrix on the issue of whether there was an intention on the part of the testatrix to revoke her will; (4) that the alleged acts of destruction constituted only dependent relative revocation; (5) that the court should not have directed the jury to return a verdict that decedent died intestate.

The appellants urge that the county court had no jurisdiction in the case because the petition alleged that Barbara Ladman died intestate, and that in their objections they denied that she died intestate, and further alleged a lost will, and that no notice of a hearing for a probate of the alleged lost will was given in the county court; that for this reason the county court had no jurisdiction to hear the petition. There is no question but that the notice required by law was given of the hearing on the petition, and that the parties appeared and a hearing was had on the day fixed in said notice, and that appellants were in court and appealed from the decision of the county court. Appellants had a right to appear in the county court and contest any of the material allegations of the petition. They availed themselves of this right. The fact that the appellants alleged a lost will in order to defeat the petition did not make it obligatory on the county court to cause to be published a notice for the probate of the alleged lost will, when the court found decedent died intestate. If the court had found that such will had not been lost or was not revoked, then it could have ordered a proper publication for its probate. But that is not an issue in this case and we do not determine that question. The appellants pleaded as a fact to defeat the petition that the decedent died testate and that there was a will, and this was decided

against them and there was nothing more for the county court to do but to enter judgment on the petition.

Mr. Smrha gave the only competent testimony as to the destruction and revocation of the will. He testified in part relative to this subject: "Q. And what was that conversation, or the substance of it; what had she called you to do? A. She wanted me to make a different disposition of her money; the days that had intervened since the will was drawn, the family had been talking about the disposition of the property, and she learned that in order to carry out the provisions of the will it would be necessary that it be taken into court, that some court procedure and the services of attorneys would be necessary to make that will binding, or carry out the provisions of the will, and she didn't want the settlement, or the distribution of her property to be made in a manner which would require any court proceedings. Q. What did she want you to do then? A. She asked me to write, or prepare a settlement or agreement where the property could be divided without court proceeding. Q. Did you make such an agreement or disposition of her property? A. I did. Q. What was done with the will then? A. The will was destroyed. Q. Well, describe in what manner it was destroyed. A. After visiting—after visiting her and learning from her what her wishes were, that she wanted this property distributed in some manner which would not require court proceedings, I went to the bank and prepared an agreement in line with her wishes; then I took this agreement and the certificate of deposit and the will back to the house. This agreement was read to Mrs. Ladman, I prepared a Bohemian translation, and we read it to her in Bohemian, and thereupon all of the children signed this new agreement and Mrs. Ladman signed this new agreement, and I asked her if she desired this agreement to take the place of the will that she had drawn, and she said that she did; so this will was destroyed by me. Q. Where? A. In the house. Q. In what manner? A. My memory isn't clear as to the manner of its destruction, but I tore it up;

I tore it up, and my recollection is that I burned it, but I am not sure of having burned it, but I know that I tore it up. Q. And in the house, and in her presence? A. Yes; and in the room where all these people were. Q. And Mrs. Ladman was there, the mother? A. Yes, sir. Q. Who asked you to tear it up, or destroy it? A. They didn't ask me to tear it up, but asked me to destroy it, and have this agreement take the place of the will. Q. Handing you what has been marked as plaintiff's exhibit 1 * * * I will ask you to examine that exhibit, and after you have examined it will you state what it is? A. Yes, sir. This is the agreement written in the Bohemian language, making disposition of her property the way she wanted it divided. Q. That was to take the place of the will? A. Yes, sir. Q. And is Barbara Ladman's name signed to that instrument? A. It is. Q. Did you see her sign it? A. I did. Q. Whose are the other signatures on that instrument? A. Joe Ladman, Anna Ladman, Mrs. Mary Logan, James Ladman, and Emil Ladman, by Anna, his sister. Q. Were all of those people present with the exception of Emil? A. They were. Q. They all signed there in the house? A. Yes, sir. Q. Who was the witness? A. I was. * * * Q. You stated you destroyed this will after this other disposition of the property was planned? A. Not planned; after it had been made."

There was quite a lengthy cross-examination of this witness, but the facts developed were in substance the same as set out above.

Section 30-210, Comp. St. 1929, is controlling: "No will, nor any part thereof, shall be revoked, unless by burning, tearing, canceling, or obliterating the same, with the intention of revoking it, by the testator, or by some person in his presence and by his direction; or by some other will or codocil in writing, executed as prescribed in this article; or by some other writing, signed, attested and subscribed in the manner provided in this article, for the execution of a will; excepting only, that nothing contained in this section shall prevent the revocation implied by law

from subsequent changes in the conditions or circumstances of the testator."

There was no testimony adduced or offered that in any way contradicted or impeached this testimony of Smrha. We believe the record and the evidence show an absolute and unconditional revocation of the will. 68 C. J. 799; *In re Estate of Nelson,* 183 Minn. 295.

The appellants contend that the trial court erred in excluding the declarations of the testatrix as to whether her will had been destroyed with the intention on her part of revoking the same. Such declarations are competent for this purpose where a will is shown to have been made and left in the custody of the testator, if it cannot be found after his death, to rebut the presumption that the testator destroyed his will *animo revocandi. Williams v. Miles,* 68 Neb. 463. However, there is no evidence in this case showing that the will was left in the possession of the testatrix. It was first left at the bank and later taken before the testatrix and torn or burnt in her presence. So this rule of law has no application to this case.

But if this rule of law were applicable to this case, the appellants have not pointed out in their brief, nor have we been able after a careful study of the record to discover, where any declarations of the testatrix as to her not revoking her will were not received by the court. At question 348 in the bill of exceptions the court overruled the objection of the appellees to such testimony, but in answer the witness related no conversation. At question 350 the court stated: "You tell what she said if you can remember the exact words; if not, give us the substance of it." Then the witness, when permitted to answer, did not state anything that was said. There was an exclusion of evidence by the court regarding a conversation about the will, but the question was objectionable on other grounds.

It is further urged by appellants that whatever revocation there was of the will was a dependent relative revocation. The intention to revoke a will may be made on condition, and if the condition is not fulfilled the revoca-

tion does not take effect. Also this doctrine is sometimes applied where a will is destroyed by mistake. The doctrine of such revocation is put in 68 C. J. 800 as follows:

"The doctrine is not applicable where the act of destruction is not referable, wholly and solely, to the intention of setting up some other testamentary paper, as where it appears that the intention of the testator was to revoke totally and absolutely," etc.

The evidence in this case discloses an absolute and unqualified revocation of the will without any condition or mistake. The new contract disposing of her property, agreed to by Barbara Ladman and her children, was entered into before the will was torn or burned. Mrs. Ladman informed the scrivener that she did not want her will and did not want to dispose of her property that way and proceeded to dispose of it in another way. The way she disposed of her property was entirely independent of her revocation of the will. That there is a misunderstanding between the heirs of decedent in carrying out the terms of the contract does not revive the revoked will. There is no serious claim that the will was not destroyed as provided by the statute, but it is claimed that the act of destruction of the will was not accompanied by the intention of the testatrix to revoke her will. While revocation of a will rests upon the intent of the testator (1 Jarmon, Wills, (7th ed.) 132), we are of the opinion that the facts as to tearing or burning of this will, in the presence of the testatrix, under the circumstances of this case as shown by the evidence, show conclusively that the destruction of the will was done at her direction with a revocatory intent. Therefore, the doctrine of dependent relative revocation does not apply to this case. *In re Estate of Nelson, supra*; 68 C. J. 799; 28 R. C. L. 182, sec. 141.

The evidence as to any material issue is not conflicting and is not such that different conclusions might reasonably be drawn therefrom, and the trial court properly withdrew the issue from the jury as to whether or not decedent died testate. We think there has been a fair trial

without prejudicial error and a correct conclusion reached, and that this court should not interfere.

AFFIRMED.