CENTER v. OLDHAM.

4-3461

Opinion delivered May 14, 1934.

*Vol T. Lindsey, James Ptak, Suzanne C. Lighton* and *Carmichael & Hendricks,* for appellant.

*Kavanaugh Oldham* and *Oscar E. Williams,* for appellee.

MEHAFFY, J. Mrs. Willie Vandeventer Crockett died in Tulsa, Oklahoma, in June, 1933, leaving surviving her the appellee, Elizabeth Crockett Oldham, and the appellant, Charles Crockett III, a grandson, the only child of Charles Crockett, who was the son of deceased.

A petition was filed in the Pulaski Chancery Court by Elizabeth Crockett Oldham in July, 1933, to establish what was alleged to be the lost will of deceased. The petition alleges that the will was made on January 3, 1932, and that it was the intention of the deceased to distribute her property as provided in said will; that is, $100 to Charles Crockett III, and the entire remainder of the estate to the petitioner, Elizabeth Crockett Oldham.

There was attached to the petition a form of will prepared by Dwight L. Savage, an attorney of Fayetteville, Arkansas. There was considerable evidence on the question of where the deceased resided, but no contention is now made as to her residence, and it is therefore unnecessary to set out this evidence.

After hearing the evidence, the chancery court found that Mrs. Willie Vandeventer Crockett did make a last will and testament, which was a holographic will, and that same was lost, and that it was in words and figures the same as the form prepared by Mr. Savage. The court also found and decreed that Mrs. Willie Vandeventer Crockett was a resident of Little Rock, Arkansas, before and at the time of her death, and that Elizabeth Crockett Oldham, as executrix, is entitled to act according to law, and ordered that the property belonging to the estate that is in the hands of the administrator, Earl Shook, be turned over to Elizabeth Crockett Oldham, executrix under said will, and that the restraining order theretofore made be made permanent. To reverse this decree, this appeal is prosecuted.

This is a proceeding to restore a lost or destroyed will. The law provides: ''Whenever any will shall be lost, or destroyed by accident or design, the court of chancery shall have the same power to take proof of the execution of such will, and to establish the same, as in the case of lost deeds.'' Section 10,542, Crawford & Moses' Digest.

Section 10,545 reads as follows: ''No will of any testator shall be allowed to be proved as a lost or destroyed will, unless the same shall be proved to have been in existence at the time of the death of the testator, or be shown to have been fraudulently destroyed in the lifetime of the testator; nor unless its provisions be clearly and distinctly proved by at least two witnesses, a correct copy or draft being deemed equivalent to one witness.''

Appellant first contends that there is no evidence that the will was in existence at the time of the death of Willie Vandeventer Crockett.

Mrs. Elizabeth Crockett Oldham testified that she was the daughter of the deceased; that she knew Mrs. Esther Smith Center, and had written several letters to her while this suit was pending. One of the letters stated that the original copy of her mother's will had been lost, and that she had to ask the court to establish the will from a copy which was drawn up by Mr. Dwight Savage. She asked Mrs. Center in the letter to tell Mr. Donham, who had been appointed guardian *ad litem* for the child, that she, Mrs. Center, knew of no other will, and to let this copy of Mr. Savage's go on, and they could settle the whole matter in a few days. When asked if she ever saw the will that her mother was purported to have made, witness said: "No; it was destroyed." This witness never saw the will, never saw the handwriting. The copy prepared by Mr. Savage was found at witness' house by Mrs. Ed Vandeventer, who is the wife of witness' uncle.

Deceased told witness that she had made a will, but there was never anybody who claims to have actually seen the will in writing. Witness said there was no fraud or collusion, but that deceased wanted her to have all her property.

Mrs. Dollie M. Storey, a Christian Science practitioner, whose advice was frequently sought by deceased, who was a member of the same denomination, testified that deceased consulted her relative to making a will some time in January or February, and that she was positive as to what deceased's wishes would be; that she wished all her property left to Elizabeth, her daughter. Deceased told this witness that she would make a will and leave everything to her daughter, Elizabeth Oldham. When asked if deceased ever talked to her afterwards about the will, she said that they talked about it for 10 days or two weeks, and one day she came to the office and said: "Well, I have attended to that business. I am thoroughly relieved that I have done the right thing."

This witness testified that she never read the will and never saw it. Deceased said that the will should be in her own handwriting, but witness does not know whether she did that or not. Witness testified that deceased was a

truthful woman, and she would believe absolutely anything she said. Witness said she did not know whether the will was in existence, but knows that deceased talked to her about its being in existence.

Mrs. Bernice Ratcliffe testified that she could not give the date or even the proximate date, but when she had called to see Elizabeth, they got on the topic of wills, and Mrs. Crockett stated that she had made a will, and she also told witness the same that Elizabeth had testified to. She said everything went to Elizabeth. She never showed witness any will, but just stated she had made her will. Witness does not know whether it was in existence at the time of her death.

Mr. Dwight L. Savage, attorney at law of Fayetteville, Arkansas, testified that he prepared a tentative copy of a will for Mrs. Willie Vandeventer Crockett, which Mr. Frankel had mailed to him with certain questions, and which instrument he returned.

The following letter, written by Mr. Savage, was introduced in evidence:

"July 15, 1933.

"Mrs. Elizabeth Crockett Oldham,
"1512 Prospect Avenue,
"Little Rock, Arkansas.
"Dear Mrs. Oldham:

"I have your letter of July 13, in which you expressed the hope that your mother's will might be established. As I recall, the facts involving my connection with the transaction were as follows:

"Mrs. Crockett decided to write a holographic will. She told me, substantially, what disposition she desired to make. of her property following her death. I dictated to my stenographer Mrs. Crockett's desires in the matter, so framed as to effectuate her intentions. The stenographer wrote this dictation upon a sheet of long white paper.

"When I handed the paper to Mrs. Crockett to read, I suggested to her, if she so desired, in copying it in her own handwriting, she could substitute language less cold and formal, and still obtain the same effect. Mrs. Crock-

ett replied that the phraseology was agreeable to her except in one instance, to-wit, that which excluded her grandson, Charles Crockett, from any participation in her estate. She said that such was her desire, but that she preferred to soften the expression thereof. "I then suggested to her that I should furnish her the paper, pen and blotter, withdraw from the office, and thus afford her an opportunity to write the will then and there. This offer she declined, however, saying that she would write it in her room at the hotel. I then gave her several sheets of paper upon which to write, and she left the office. I am unable to recall any further reference by her to the will in our subsequent conversations. I do not know whether or not she actually wrote the will.

"I made no charge for my services, as I always remembered your mother's kindness to me when I was a student in the University; and it was a pleasure to me to try to reciprocate.

"I should willingly testify to the above facts. Unfortunately, however, such testimony would fall short of the requirement for establishing a will, as I understand the law. With the single exception of wills, it is my practice to keep carbon copies of all instruments I prepare. Many testators, however, from time to time, execute new wills in which they change beneficiaries, or bequests, or both. Because of this fact, I regard it as contrary to the interest of the testator that there should be in existence copies of earlier wills, later revoked. I assure you that I will willingly assist you in the matter of your mother's affairs in any way that I shall be able.

"Expressing to you my deep sympathy because of the death of your mother, to whom I was devoted, and sending personal regards to Kavanaugh, I am,

"Sincerely yours,

"Dwight L. Savage.

There was also introduced a photostatic copy of the form prepared by Mr. Savage. There was considerable evidence introduced showing that it was the intention of the deceased to make a will leaving everything to her daughter, but there is no evidence that she ever executed.

the will, except that numbers of witnesses testified that she said she made the will. No one ever saw it, and no one knew that she ever executed the will, and there is no evidence anywhere in the record that the will, if she did execute one, was in existence at the time of her death.

The appellee says that she thinks § 10,545 of Crawford & Moses' Digest means that the will must not have been revoked by the testator, but that is not what the statute says. The statute says that no will of any testator shall be allowed to be proved as a lost or destroyed will unless the same shall be proved to have been in existence at the time of the death of the testator, or shown to have been fraudulently destroyed in the lifetime of the testator.

There is no evidence that the will was fraudulently destroyed, and it is not contended that the will was fraudulently destroyed, and there is no evidence that the will was in existence at the time of her death. No will was ever found, and the parties interested had access to all of deceased's papers, and certainly, if the will had been in existence at the time she died, it seems that somebody would have found it, especially when several of them say that they knew she intended to make a will, and that she had told them that she had done so.

Appellee cites and relies on the statement of the law in 28 R. C. L. 380. It is there stated that a will lost or destroyed previous to the testator's death may, if unrevoked, be established, etc. But, if it were destroyed before her death, unless the evidence showed that it was fraudulently destroyed, it could not be probated. It could not be in existence at the time of her death if it was destroyed before her death, and the evidence must show, under § 10,545, that it was in existence at that time. The section relied on by appellee also states as follows: ''It seems that the fact of loss or destruction may be proved by circumstantial or direct evidence.'' But if it were proved by direct evidence that a will was made, it would still have to be shown by the evidence that it was in existence at the time of the death of the testator. It is alleged that the will here involved was a holographic will. The

fifth subdivision of § 10,494 of Crawford & Moses' Digest describes a holographic will in this State.

It is stated in 1 Page on Wills, p. 584: "Since the Legislature has made specific provision for attested wills, and for holographic wills which are executed in accordance with certain specified formalities, holographic common-law wills which do not comply with the statutory formalities are invalid. The statutes providing for the execution of holographic wills are mandatory and not directory, and a holographic will is invalid unless it complies therewith."

Our attention has not been called to any case construing our statute or a like statute of another State. There are many cases, however, construing somewhat similar statutes, and these statutes are generally held to be mandatory and not directory. In order to probate a holographic will, it must, under our statute, be shown to be in existence at the time of the death of the testator. If it be conceded that a holographic will was made, it could not be probated unless the evidence showed that it was in existence at the time of the death of the testator.

Under the North Carolina statute, certain requirements as to the place of finding of a holographic script, testamentary in its nature, must be satisfied in order that it may be established as a will. Our statute does not provide that it must be found among valuable papers, but it does provide that the evidence must show it was in existence at the time of the death of the testator.

The North Carolina Supreme Court said: "One alternative requisition of the statute is that it must 'be found among the valuable papers or effects' of the alleged testator. The provisions of the statute are, of course, mandatory and not directory, and therefore there must be a strict compliance with them before there can be a valid execution and probate of a holographic script as a will; but this does not mean that the construction of the statute should be so rigid and binding as to defeat its clearly expressed purpose. It must be construed and enforced strictly, but at the same time reasonably." In re Will of W. T. Jenkins, 157 N. C. 429, 72 S. E. 1072,

37 L. R. A. (N. S.) 842. The same court in another case held that the statutory provisions must be followed in all the essential respects. In re Bennett's Will, 180 N. C. 5, 103 S. E. 917. See also *Hooper* v. *McQuary*, 45 Tenn. (5 Cold.) 129.

These cases hold that the statute with reference to the finding of the will after the testator's death must be complied with. Under our statute, as we have said, it must be shown that the will was in existence at the time of the death of the testator. There is no evidence, either direct or circumstantial, tending to prove that the will was in existence at the time of the death of the testator. If the proof had been clear and explicit, or if it had been admitted that the will was made, still it could not be probated unless it was shown to be in existence at the time of the death of the testator.

Our statute, § 10,494, provides that a holographic will may be established by the unimpeachable evidence of at least three disinterested witnesses to the handwriting and signature of the testator. In order to restore a lost or destroyed will, it must not only be shown by the evidence that the will was in existence at the time of the death of the testator, but its provisions must be clearly and distinctly proved by at least two witnesses, a correct copy or draft being deemed equivalent to one witness.

There is abundant evidence that the deceased intended to make a will, but no evidence, except her statement, that she had ever made one. So there is a complete failure of proof as prescribed by statute, either that she made a will or its provisions. The copy introduced in evidence is nothing more than a copy of a form prepared by Mr. Savage, and no evidence in the record anywhere that the deceased ever copied this. It is true several witnesses say that she told them that she had made her will, and told them what its provisions were, but the statute requires the provisions to be clearly and distinctly proved by at least two witnesses. If the proof showed that she made the will by copying the form given her by Mr. Savage, then this copy might be introduced and be deemed equivalent to one witness. But there is

no evidence that she copied this; and there is no evidence in the record at all that she made a will, except evidence of witnesses who testify that she told them she had.

We do not deem it necessary to discuss at length the question of whether she made a will, because we have already said that there was no evidence that it was in existence at the time of her death.

Appellee, however, says that, if she is correct in her contention that Mrs. Crockett prepared her will according to the draft she had Mr. Savage prepare for her, then the contents are clearly shown; but we have already said that there is no evidence tending to show that she prepared her will according to the draft that she had Mr. Savage prepare. On the contrary, the evidence shows that after Mr. Savage had prepared the form he gave her some paper, and told her that he would retire and leave her in his office to copy the will. She declined to do this, but said she would take it to her room at the hotel and copy it; but there is a total lack of evidence that she copied it at her hotel or anywhere else.

The decree of the chancery court is therefore reversed, and the cause remanded with directions to dismiss the petition.