249 Minn. 254 (1957)
82 N.W. (2d) 239
IN RE ESTATE OF ARNOLD N. GREENBERG.
LINN J. FIRESTONE
v.
BLANCHE H. GREENBERG AND ANOTHER.
No. 36,980.
Supreme Court of Minnesota.
March 15, 1957.
*255 Mahoney & Mahoney, for appellants.
Richard E. Kyle, William W. Fink, and Briggs, Gilbert, Morton, Kyle & Macartney, for respondent.
THOMAS GALLAGHER, JUSTICE.
Appeal from a district court order denying the motion of petitioner, Blanche H. Greenberg, widow of Arnold N. Greenberg, for amended findings and conclusions or a new trial in proceedings relative to the last will of Arnold N. Greenberg. In such findings and conclusions the district court affirmed an order of the probate court which denied letters of administration to petitioner and which admitted to probate an instrument determined to be a true copy of decedent's last will executed by him on March 26, 1951, which had been lost or destroyed.
On appeal petitioner contends that (1) the evidence presented to prove that the will remained unrevoked as required by M.S.A. 525.261 was insufficiently clear, convincing, and satisfactory for such purpose; and (2) evidence of interlineations in the will as testified to by Zolle A. Dworsky, as well as his other testimony, compelled a finding that decedent had revoked the will prior to his death.
*256 Arnold N. Greenberg died in an automobile accident on June 5, 1954. He left surviving the petitioner herein and a son, Roger Greenberg, then of the age of 22 years. The challenged will was drafted by Linn J. Firestone, a St. Paul attorney, and was executed by decedent in Minneapolis at Mount Sinai Hospital on March 26, 1951. Firestone and his legal associate, James H. Levy, attested to decedent's signature and declarations therein. The original will remained in decedent's possession and a copy thereof was retained by Firestone.
The will names Firestone and petitioner as executors and provides for a specific bequest of $2,500 to a nephew of decedent. Thereafter it directs that the remainder of the estate of approximately $400,000 in value be divided into two equal parts, each part to constitute a separate testamentary trust. Peter A. Dworsky, a brother of petitioner, and Linn J. Firestone are named as joint trustees of each trust.
In the first trust thus created, the entire income is made payable to petitioner for her lifetime with provisions for withdrawal of principal up to $5,000 per year in the discretion of the trustees to meet emergency needs of petitioner. Upon her death the trust funds remaining in the trust at that time are to go to such persons as she appoints to receive them by her last will. If she fails to exercise this right, after her death the trust is to continue for the benefit of decedent's son with provisions for ultimate distribution of principal to him, as well as alternative provisions for distribution applicable in case of his death and that of petitioner before such final distribution.
In the second trust petitioner is likewise the beneficiary of all income therefrom throughout her lifetime, but no power of appointment for distribution of principal upon her death is granted to her. Provisions for annual withdrawal of principal up to $5,000 to meet emergencies similar to those in the first trust are included. Upon her death the trust is to continue for the benefit of decedent's son, and provisions are included for distribution of principal in his favor with alternative provisions therefor in the event of his death prior to the dates required for such distribution.
*257 In a discussion between decedent and Firestone about two months after the will was executed, decedent advised Firestone that he did not intend to change the will, and thereafter it was never discussed between them, although Firestone continued to act as decedent's attorney up to the time of his death.
Zolle A. Dworsky, a brother of petitioner and of Peter A. Dworsky, one of the trustees in the will, testified that on Thanksgiving Day of 1952 he was alone with decedent in decedent's home and that after some conversation critical of the will decedent in his presence tore up the will and burned the fragments in his fireplace. This testimony was in conflict with that of attorney Joseph A. Bard of Minneapolis, who testified that in the summer of 1953 decedent had come to his office in Minneapolis on legal business, and in the course of the conversation had taken out the original will which Bard then had read at decedent's request so that the former might express an opinion as to its merits. Bard at one time had testified that this meeting occurred in the summer of 1952, but in the district court proceedings he fixed the time as in the summer of 1953, testifying that reference to his office notes and memoranda had caused him to correct the date originally given.
The testimony of two additional lawyers, Ralph Stacker and Julius E. Kubier, was also in conflict with the testimony of Zolle A. Dworsky. Stacker testified that in conversations with decedent about two weeks before his death, decedent had stated that Milton Firestone had fixed him up a couple years prior thereto in connection with his will. Milton Firestone was the father of Linn J. Firestone and a member of the same law firm. Julius E. Kubier testified to a number of conversations with decedent during the early months of 1954, the last of which took place about 10 days before decedent's death, wherein each time decedent indicated that his will was in existence and that he intended to bring it to the witness so that the latter might examine it and give an opinion with reference to it.
The evidence disclosed that on June 7, 1954, two days after decedent met death and prior to his funeral, petitioner had entered a safety deposit box in the Northwestern National Bank in Minneapolis, *258 to which she and decedent had access and which was in the name of Greenberg Investment Company, one of the companies owned by decedent; that she subsequently entered it on August 3, August 4, August 18, September 24, December 6, 1954, and January 25, 1955; and that on none of such occasions had any representative of the bank received notification of decedent's death as required by M.S.A. 291.20. In testifying in probate court as to her search for decedent's will, no mention was made by petitioner of such visits, and when in subsequent proceedings she was asked why she had not disclosed such facts or told of what she had found in the safety box, she replied that no one had questioned her with reference thereto.
It was not until November 30, 1954, that petitioner instituted proceedings for letters of administration in decedent's estate on the claim that he had died intestate. Prior to the hearing thereon, the probate court was advised by Firestone relative to the will, and a photostatic copy thereof was submitted to the court. At the hearing on January 11, 1955, petitioner testified that she knew decedent had made a will but thought that he had destroyed it; that she had searched all over for it but could not find it.
The probate court thereupon requested Firestone to petition to have the will admitted by copy as a lost instrument. At the hearing thereon on April 1, 1955, petitioner testified that she had never seen decedent destroy his will and had no knowledge that it had been destroyed. In subsequent hearings she testified that, prior to the time she was thus testifying, her brother Peter had told her that her brother Zolle had witnessed decedent destroy the will. Likewise, Zolle A. Dworsky was present at the April 1, 1955, hearing and heard petitioner testify that she had no knowledge that the will had been destroyed but said nothing with reference to his having observed its destruction or having advised petitioner to such effect prior to her testimony.
At the close of the testimony and prior to its findings and conclusions, the trial court stated:
*259 "* * * The question is, which witnesses am I to believe? * * * am I to believe Mr. Kubier, Mr. Bard, and Mr. Stacker, or Mr. Dworsky, who has unequivocally and positively sworn that he saw the decedent destroy that will on Thanksgiving Day in 1952? * * * I just can't believe that Mr. Dworsky is telling the truth. I just can't conceive of why three lawyers who have absolutely no interest in this case at all would come into this court and testify falsely about that. I just couldn't possibly make any such finding as that at all. So I am compelled to affirm and perhaps that is all I should say."
1. M.S.A. 525.261 provides that no lost will "shall be established unless it is proved to have remained unrevoked nor unless its provisions are clearly and distinctly proved." Under this statute it is not essential to the establishment of a lost will that it be shown to have been in existence at the testator's death. See, In re Estate of Havel, 156 Minn. 253, 194 N.W. 633, 34 A.L.R. 1300, decided before § 525.261. Decisions from states such as New York, Arkansas, Washington, California, Ohio, Indiana, and Montana, with statutes requiring proof that will claimed to have been lost was in physical existence at time of testator's death or had been fraudulently destroyed in his lifetime, are thus distinguishable.[1] Under § 525.261 the burden of establishing that a lost or destroyed will remained unrevoked rests upon the proponents of such a will. In re Estate of Calich, 214 Minn. 292, 8 N.W. (2d) 337.
2. Examination of the record convinces us that the trial court was correct in its determination that proponent here had sufficiently sustained the burden thus placed upon him. The evidence presented by him on the issue of nonrevocation included not only declarations made by decedent to reputable attorneys at frequent intervals almost *260 up to the time of his death, which clearly manifested that the will was still in existence, but also testimony of one such attorney that during the summer of 1953, subsequent to the date on which petitioner contends the will had been physically destroyed, the original will was submitted to him by decedent and that he had occasion at that time to read it and advise decedent with respect thereto. There is also evidence of petitioner's unauthorized visits to decedent's safety deposit box after his death and her silence with respect thereto. An inference might properly be drawn therefrom that the will to which she was hostile had been in existence up to that time. See, Annotation, 3 A.L.R. (2d) 976.
3. Also to be considered as bearing on this question is the likelihood that the will, in which decedent had made adequate and substantial provisions for those closest to him, would be preferred by him to intestacy under which his widow and son, both with limited business experience, would take unrestricted control of his substantial estate. Further, there is nothing to indicate that a change of decedent's circumstances prior to his death had led to his conclusion that a change of beneficiaries or in the protective features of the will was advisable or desirable; nor is there any evidence that at any time, either to his widow, to his son, to his attorneys, or to anyone else, did decedent state that he had destroyed or burned or otherwise revoked the will. Such evidence and the circumstances outlined appear ample to support the trial court's finding that respondents had sustained the burden of establishing that the will remained unrevoked up to the time that decedent met death. Goodale v. Murray, 227 Iowa 843, 289 N.W. 450, 126 A.L.R. 1121; Bowery v. Webber, 181 Va. 34, 23 S.E. (2d) 766; Wendt v. Ziegenhagen, 148 Wis. 382, 134 N.W. 905; In re Keene's Estate, 189 Mich. 97, 155 N.W. 514.
4. Petitioner asserts that declarations of a decedent are without probative force on the issue of nonrevocation, citing decisions from a number of state courts in support thereof. Examination of these decisions reveals that a number of them come from states wherein the statutory requirements make essential proof of the physical existence *261 of the will at the testator's death, or of its fraudulent destruction during his lifetime.[2] Others appear limited to holding that such declarations may not be received as proof of a testator's execution of a will or of its contents but do not hold that such declarations may not be received as evidence that he has not revoked a will properly executed, the terms of which were ascertainable from a copy thereof.[3] Still others concede that the declarations of a testator are admissible on the issue of nonrevocation but hold that in themselves without other evidence they are insufficient to establish nonrevocation.[4]
5. It has been pointed out, in the instant case, that much evidence separate and distinct from decedent's declaration gives strong support to the finding of nonrevocation. While this court does not appear to have passed upon this particular question, a substantial majority of the opinions from other states is to the effect that, when, as here, such declarations are submitted with other evidence, they are relevant and competent to overcome the presumption that a will known to have been executed by and left in the custody of a testator, which cannot be found after his death, was revoked by him during his lifetime. See Annotation, 3 A.L.R. (2d) 960, wherein numerous decisions are cited, giving support to this rule. In line therewith we hold that decedent's repeated declarations here, which clearly indicated the existence of the will up to within a few days of his death, were competent on the issue of its nonrevocation.
6. Petitioner contends that the testimony of the witness, Zolle A. Dworsky, being undisputed must be accepted at its face value and accordingly that it compels a finding of revocation of the will by its physical destruction by decedent on Thanksgiving Day, 1952. We do not agree with this contention. The credibility of the witnesses was *262 for the trial court. In re Estate of Calich, 214 Minn. 292, 298, 8 N.W. (2d) 337, 341. Reference to the evidence reveals much which could create substantial doubt on the credibility of this witness. One illustration comes quickly to mind. It is extremely unlikely that, if prior to her testimony in probate court on April 1, 1955, petitioner had been advised that this witness had observed decedent destroy the will in November 1952, as she later testified in district court, she would nevertheless have testified in the probate court hearing that she knew decedent had made a will; that she did not know of its destruction; and that she had made a search for it after his death but had been unable to find it. Nor does it seem likely that Dworsky would have remained silent in the courtroom while petitioner thus testified if he knew of the will's destruction and had previously advised her thereof. We feel that there is nothing in the record which would compel us to set aside the trial court's judgment on the question of credibility and to substitute our own therefor.
The order appealed from is affirmed.
Affirmed.
NOTES
[1] Matter of Kennedy, 167 N.Y. 163, 60 N.E. 442; Matter of Flynn, 174 Misc. 565, 21 N.Y.S. (2d) 496; Matter of Blackstone, 172 Misc. 479, 15 N.Y.S. (2d) 597; Center v. Oldham, 189 Ark. 253, 71 S.W. (2d) 207; Kellogg v. Ridgely, 161 Ind. 110, 67 N.E. 929; In re Colbert's Estate, 31 Mont. 461, 78 P. 971, 80 P. 248, 107 A.S.R. 439, 3 Ann. Cas. 952; Estate of Flood, 47 Cal. App. (2d) 809, 119 P. (2d) 168; Behrens v. Behrens, 47 Ohio St. 323, 25 N.E. 209, 21 A.S.R. 820; In re Auritt's Estate, 175 Wash. 303, 27 P. (2d) 713.
[2] Matter of Kennedy, 167 N.Y. 163, 60 N.E. 442; In re Colbert's Estate, 31 Mont. 461, 78 P. 971, 80 P. 248, 107 A.S.R. 439, 3 Ann. Cas. 952.
[3] Cantway v. Cantway, 315 Ill. 244, 146 N.E. 148; Griffith v. Higinbotom, 262 Ill. 126, 104 N.E. 233; In re Estate of Morgan, 389 Ill. 484, 59 N.E. (2d) 800.
[4] In re Estate of Jensen, 141 N.J. Eq. 222, 56 A. (2d) 573, affirmed, 142 N.J. Eq. 242, 59 A. (2d) 624.