In the Matter of the ESTATE OF Gust LANGLIE, Deceased.

No. C9–84–278.

Court of Appeals of Minnesota.

Sept. 18, 1984.

Charles A. Krekelberg, Pelican Rapids, for appellant.

Paul O. Skatvold, Moorhead, William Kirschner, Fargo, N.D., for respondent.

Heard, considered and decided by POPOVICH, C.J., and LESLIE and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

This appeal is on an order admitting for probate copies of Gust Langlie's 1979 Will and 1980 Codicil. The original copies of the instruments were not found. It is undisputed both documents were lawfully executed. Appellant, decedent's niece, con-

tends that the lost Will and Codicil were destroyed and revoked, and that the trial court erred in a contrary finding. We affirm.

## FACTS

Gust Langlie died on May 28, 1983, at the age of 85. His survivors included appellant, Ella Henjum, one of the children of Langlie's deceased brother; and respondent, Eugene Langlie, one of the children of another deceased brother. Eugene Langlie's petition estimated that decedent left his home together with personal property of the approximate value of $200,000.

Gust Langlie executed a Will in August 1979. The Will provided no benefits for appellant, Ella Henjum. Eugene Langlie and his two sisters were residuary beneficiaries in the Will. Two thousand dollar ($2,000) legacies were provided for three siblings of Ella Henjum.

In July 1980, Gust Langlie executed a Codicil to his Will. This instrument repeated most of the provisions of the 1979 Will but added a devise of the testator's home to Sylvester Theising, a friend who had lived with the decedent for more than fifteen years. Theising is also a respondent in this appeal.

Eugene Langlie's petition reported his belief that decedent's Will and Codicil were lost or misplaced. Conformed copies of both instruments were furnished by Kathleen Wier, an attorney who provided legal services to Gust Langlie for many years. Wier and several other witnesses testified about events beginning on March 25, 1983, when it was discovered that Langlie's Will and Codicil were not in a safe deposit box where he and his attorney thought they were kept.

On March 25, 1983, Gust Langlie had a long conference with Kathleen Wier. This was shortly after Langlie was discharged from the hospital. His health had deteriorated since 1982, and he wanted to give a power of attorney to his niece, Janet Hillier, one of Eugene Langlie's sisters. Later in the day, Langlie, his niece, and his attor-ney learned that his Will and Codicil were not in his safe deposit box.

Gust Langlie said on March 25 that he could not remember where else the Will and Codicil might be. Janet Hillier recalled that Langlie thought they were at the courthouse. Kathleen Wier recalled that Langlie had left his Will with his sister-in-law when he was hospitalized some years earlier, and Wier suggested that Janet Hillier look for the Will and Codicil at Langlie's home. Janet Hillier and Gust Langlie could not find the Will and Codicil at Gust Langlie's home, and they were not located during a later search of the home by other family members. Gust Langlie was hospitalized again during the early part of April 1983.

On April 29, 1983, Kathleen Wier met with Gust Langlie to discuss several matters, including his Will. She found Langlie in a "very frail" condition. Knowing he had an appointment to see his doctor, Wier wrote to the doctor for an opinion on Langlie's capacity to execute a replacement Will. On May 3, Dr. John Holten wrote that he found Langlie confused that day on matters of his age, his date of birth, the date, his nephew's name, and his medications. The doctor said he foresaw times when Langlie would be "clear enough" to make rational judgments.

Gust Langlie was hospitalized shortly after this medical appointment on May 3, and he died on May 28. His doctor reported he suffered from heart disease and "organic brain syndrome, probably secondary to arteriosclerotic cerebral vascular disease."

In her last two conferences with Gust Langlie, on March 25 and April 29, Kathleen Wier asked him if he wished to make a different Will or make any changes in his Will. Wier testified her client declined to make any changes and said he wanted the terms to remain the same at the time of his death. Janet Hillier witnessed one of these contacts and testified her uncle said he "wanted to keep the same provisions." Gust Langlie had a strong interest in his Will and had discussed the terms with Kathleen Wier on many occasions over a

period of years. Wier testified her client never suggested his Will or Codicil had been destroyed, but said he believed the documents were in his deposit box.

In 1974 Gust Langlie executed a Will with family provisions closely resembling the 1979 Will and 1980 Codicil. He had been close to the family of his brother Walter, Eugene Langlie's parent. Walter's widow was given a $5,000 bequest in the Will and the Codicil. Gust Langlie had not established a relationship with Ella Henjum. He had disliked her husband and had little contact with Ella for fifteen years prior to 1982. He was visited by Ella several times in 1982 and 1983.

The evidence refers to numerous details in the last three months of Gust Langlie's life. He had become fearful of a placement in a nursing home, but he was told by his attorney his family would try to get care for him at home. He had disagreements with Sylvester Theising. His relatives were concerned that the disagreements disturbed Langlie and successful steps were taken through Kathleen Wier so that Theising left the Langlie home early in May 1983. Langlie and Theising had discussed for some months Theising's purchase of Langlie's home, and Theising made payments totaling $5,000 on that proposal. About March 1983 Langlie tried to complete a $9,000 gift to Theising, the same amount Theising was to receive under a 1981 Letter of Advisement prepared by Langlie and given to his attorney.

The trial court concluded that direct evidence showed that Gust Langlie's Will and Codicil were lost and were in effect "long after March 25, 1983." The court concluded there was "truly not one shred of evidence, other than the fact that these instruments have never been discovered" to suggest revocation of Gust Langlie's Will and Codicil.

## ISSUE

Does evidence in the case support a trial court finding that decedent's Will and Codicil were lost but not revoked?

## ANALYSIS

Scope of Review.

■ Our review is governed by Rule 52.01, Minn.R.Civ.P. for Municipal Courts. *See* Minn.Stat. § 524.1–304 (1982), and § 487.23, subd. (1) (1982). The rule states:

Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

A finding supported by the evidence can be found clearly erroneous if the reviewing court, considering the entire evidence in the case, is left with the definite and firm conviction that a mistake has been committed. *In Re Estate of Balafas*, 293 Minn. 94, 198 N.W.2d 260 (1972).

Burden of proof.

Appellant urges our review of the evidence with regard for a burden of the proponent to prove nonrevocation of the Will and Codicil by clear and convincing evidence. This proposition misstates the law and requires careful attention.

Minn.Stat. § 525.261, repealed by Minn. Laws 1975 ch. 347, § 144, required that the provisions of a lost will be proved "clearly and distinctly." *See In Re Calich's Estate*, 214 Minn. 292, 8 N.W.2d 337 (1943). The provisions of Gust Langlie's 1979 Will and 1980 Codicil are shown in conformed copies and are not disputed.

■ The proponent of a lost will must prove it was not revoked. *In Re Sandstrom's Estate*, 252 Minn. 46, 89 N.W.2d 19 (1958). This burden is one to go forward in the face of a common law presumption that a lost will possessed by a testator has been destroyed. *See In Re Havel's Estate*, 156 Minn. 253, 194 N.W. 633 (1923), and *In Re Obernolte Estate*, 91 Cal.App.3d 124, 153 Cal.Rptr. 798 (1979). Neither statutes nor appellate decisions in Minnesota impose on the proponent a burden greater than proof by a preponderance of the evidence. *See Aubin v. Duluth St. Ry. Co.*, 169 Minn. 342, 211 N.W. 580 (1926).

■ The burden of proof on a will is now declared by a section of the Uniform Probate Code, Minn.Stat. § 524.3–407 (1982). The statute provides:

> In contested cases * * * [p]roponents of a will have the burden of establishing prima facie proof of due execution in all cases, and, if they are also petitioners, prima facie proof of death and venue. Contestants of a will have the burden of establishing lack of testamentary intent or capacity, undue influence, fraud, duress, mistake or revocation. Parties have the ultimate burden of persuasion as to matters with respect to which they have the initial burden of proof.

Commissioner's Comments on Uniform Probate Code, § 3–407 state:

> This section is designed to clarify the law by stating what is believed to be a fairly standard approach to questions concerning burdens of going forward with evidence in will contest cases.

*Uniform Probate Code*, Official Text, National Conference of Commissioners on Uniform State Laws. As suggested by the UPC Comment, § 524.3–407 does not alter Minnesota law. The contestant must prove revocation, but evidence of loss of a will possessed by the testator switches to the proponent the burden to go forward with evidence. A prima facie showing of nonrevocation compels admission to probate unless it does not preponderate over evidence offered by contestant, who has the ultimate burden of persuasion on revocation.

The preceding conclusions on the burdens of the parties and on the effect of a presumption of revocation, are further compelled by Rule 301, Minn.R.Evid.:

> In all civil actions and proceedings not otherwise provided for by statute or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

Evidence.

■ We conclude the trial court did not err in admitting the Langlie Will and Codicil for probate. Direct evidence showed that Gust Langlie confirmed the provisions of the Will and Codicil after the instruments could not be located. Declarations of this kind are competent evidence of nonrevocation. *In Re Greenberg's Estate*, 249 Minn. 254, 82 N.W.2d 239 (1957).

■ Significant circumstantial evidence confirms the finding of nonrevocation. In the Will and Codicil instruments and in an earlier Will, Langlie favored the family of his brother, Walter. He enjoyed good relationships with members of that family and almost no relationship with Ella Henjum, who was given no benefits in documents drawn in 1974, 1979, or 1980. Significantly, in both the Will and the Codicil, the testator made bequests for siblings of Ella Henjum. Reasonable explanations for provisions in a lost will highlight the rationale of the Minnesota Supreme Court when affirming a similar trial court decision. *Greenberg's Estate, Id.* Likewise, the absence of evidence on reasonableness of provisions is an important factor supporting a trial court decision to refuse probate of a lost will. *Calich's Estate*, 214 Minn. 292, 8 N.W.2d 337 (1943).

■ Evidence on the declarations and relationships of Gust Langlie is undisputed. We must defer to the trial court in judging the credibility of that evidence. What remains is an examination of appellant's contention that other circumstances suggest Langlie rejected his Will and Codicil.

■ Gust Langlie failed to replace his Will between March 25, 1983, and the date of his death, a period of 63 days. When a testator has knowledge a will is lost, inaction may show revocation, but only where circumstances reasonably enable the testator to replace the will. *Parsons v. Balson*, 129 Wis. 311, 109 N.W. 136 (1906). In *Parsons*, the doctrine was applied to make a will where a testator had three years to remake a destroyed will.

As the trial court observed, the circumstances here do not permit giving great weight to the absence of a replacement will. During April 1983, decedent believed his Will and Codicil were intact. He was 85 years of age, his health was rapidly deteriorating, and he was under stress because of difficulties in arranging care for himself. By the beginning of May his attorney was warned his competence was confined to lucid intervals, and during most of the month he was hospitalized in the last stage of his fatal illness. The attorney also believed the Will and Codicil would be found, and she was reassured that her client wanted no changes in the instruments. After fully reviewing the evidence, we conclude that the trial court did not clearly err in finding inaction of the testator to be unpersuasive, particularly in the face of substantial direct evidence of nonrevocation.

Appellant's final contention deals with the relationship of Gust Langlie and Sylvester Theising. After the onset of his last illness, Langlie had difficulties with his friend. However, there is no evidence that Langlie altered his favor for Theising, and no suggestion whatsoever that he entertained notions of retracting a devise for his friend. To the contrary, even in the period of the disputes, the decedent attempted to favor Theising with a gift of money and a sale of property, transactions resembling Langlie's plans for Theising in the 1980 Codicil and a 1981 Letter of Advisement. It is important that Langlie had a close relationship with Theising and that the two men had lived with one another for more than fifteen years.

## DECISION

Having due regard for the findings of the trial court, and for the appellant's ultimate burden of persuasion, we sustain the decision of the trial court to admit to probate the 1979 Will and the 1980 Codicil of Gust Langlie.

Affirmed.