In re Estate of Dorothy E. BOTKO, Deceased.

No. C7–95–1358.

Court of Appeals of Minnesota.

Jan. 9, 1996.

Review Denied Feb. 27, 1996.

Thomas V. Omdahl, Grand Forks, ND, for Appellants.

Neal A. Lano, Lano, Nelson, O'Toole & Bengtson, Ltd., Grand Rapids, for Respondent.

Considered and decided by KALITOWSKI, P.J., and CRIPPEN and FOLEY,* JJ.

## OPINION

CRIPPEN, Judge.

The trial court refused to admit to probate as decedent's will a document offered in the form of a photocopy of the signed original. Appellants, proponents of the will, contend that the photocopy leaves no room for the inference that the original is revoked and in any case that the evidence here was sufficient to overcome any such inference. We affirm, finding no merit in either of appellants' contentions.

## FACTS

Testator Dorothy Botko died on November 9, 1994. A Petition for Formal Adjudication of Intestacy was filed with the trial court, and testator's niece, Kathryn Hansen, was nominated as personal representative.

Before the initial hearing in the case, testator's residence was searched for a will. A photocopy of testator's will, along with various personal writings, was found in one of several steel boxes/organizers located in a closet. The will, dated November 1, 1989, left approximately half of testator's estate to her family and half of her estate to family of her then-recently deceased husband.

Appellants' counsel submitted an Objection to Petition for Formal Adjudication of Intestacy, signed by appellant David Conely, one of testator's deceased husband's relatives, noting that a "copy of a signed will dated November 1, 1989 was found * * *" and that it was believed "that a further search of [decedent's] apartment or personal belongings of the decedent will turn up the original will."

The court subsequently heard testimony by respondent Kathryn Hansen and appel-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

618

lant Phyllis Erickson. Phyllis Erickson testified that she was a devisee in the photocopied will and requested that she and Kathryn Hansen be appointed joint personal representatives, or alternatively that the court appoint a neutral party, because the personal representative named in testator's photocopied will was deceased. Phyllis Erickson also testified that she and testator were close friends, that she believed that testator's photocopied will was fair to both sides of the family, and that she thought testator and her deceased husband would have wanted testator's affairs settled as provided in the photocopied will.

Kathryn Hansen testified that, after a search of testator's apartment, no original will was found, and that a later search of testator's apartment also failed to produce an original of the will. The photocopied will was introduced into evidence. Kathryn Hansen testified that she was aware that testator's bank safety deposit box was searched by a police officer and a friend of testator after testator's death, and no will had been found there.

The trial court then issued an order finding:

[D]ecedent died intestate, that the heirs of decedent are Kathryn Hansen, a niece and Carol Hansen, a niece, Patricia Angelos, a niece and Alex Angelos, a nephew.

The court also appointed Kathryn Hansen as personal representative of testator's estate. The court subsequently filed an Order of Formal Adjudication of Intestacy and attached a memorandum stating:

(1) that there is no original duly executed last will and testament of the decedent before this Court; (2) that the heirs and others had made a diligent effort to determine the existence of an original duly executed last will and testament and those efforts included searching the home of the decedent and her personal papers, inquiring of the attorney who drew the will, searching the will depository at the courthouse and a further extensive search of the premises of the decedent and any other areas of safe keeping where the decedent may have deposited a will; (3) no original duly executed will was ever found and

further efforts would only be repetitive of prior searches; (4) David Conely [appellant] has failed to adduce any evidence that the copy of the will dated November 1, 1989, received by this Court as Exhibit No. 1 was not revoked, but merely lost.

## ISSUE

Did the appellants succeed as a matter of law in showing cause to admit to probate a photocopy of the will dated November 1, 1989?

## ANALYSIS

█ Review of the trial court's finding of fact is limited to determining if the court clearly erred. *In re Estate of Langlie*, 355 N.W.2d 732, 735 (Minn.App.1984). The finding should not be overturned unless this court is "left with the definite and firm conviction that a mistake has been committed." *Id.*

### I. Inference of Revocation

█ The trial court, in its findings, treated the fact that testator's original will was not produced as evidence of revocation. Appellants contend that because a photocopy of the signed original was found, any inference of revocation was eliminated. Appellants propose, in effect, that a photocopy of a signed original constitutes evidentiary proof of the original as a matter of law. Consistent with the common law principle that a lost will is presumed revoked, it remains true in Minnesota that the absence of the original is entitled to some evidentiary weight in determining revocation. *In re Estate of Pundt*, 280 Minn. 102, 105, 157 N.W.2d 839, 841 (1968) (stating that under common law, a lost will is presumed revoked if (1) at the time the will was last seen, it was in the testator's possession, and (2) the will cannot be located after the testator's death).

█ Appellants point to a Minnesota case holding conformed copies of a testator's will and codicil in the possession of testator's attorney, together with other evidence of nonrevocation, sustained a lower court's finding that testator's will was lost but not revoked and therefore admissible to probate.

*Langlie,* 355 N.W.2d at 736–37. *See also In re Estate of Carlson,* 384 N.W.2d 239, 241 (Minn.App.1986) (holding conformed copy of will held by testator's attorney was admissible, even though original could not be located, once prima facie showing of nonrevocation was made). We find that despite appellants' argument, the law permits an inference of revocability when an original will is not produced and the record shows no evidence that the original will was kept by someone other than decedent; *Langlie* and *Carlson* do not deny the existence of the inference but merely illustrate that the inference may be overcome by a showing of nonrevocation.

Appellants cite a Michigan case for the proposition that the photocopied will in this case should not be considered lost, and therefore the presumption of revocation should not apply. *See In re Estate of Christoff,* 193 Mich.App. 468, 484 N.W.2d 743, 746 (1992) (holding that photocopy of will was admissible where substantial evidence, such as testator's predeath statements, the location of testator's duplicate will in an envelope located among his important papers, and attribution of loss of testator's original will to dissolution and loss of documents of a law firm, showed unquestioned intent of testator). *Christoff* also does not deny the inferential value of the loss of a will.

## II. Evidence of Nonrevocation

■ The trial court found the will revoked not only because the original was not produced but also because appellants produced no credible evidence that the testator intended to preserve the terms of the photocopied will. The record contains adequate evidence that the inference of revocation was not overcome. The only testimony brought forth by appellants as evidence of nonrevocation was appellant Phyllis Erickson's testimony that a finding of validity would be "fair" and that if testator and her husband had been alive "that's how they would have wanted it, to include both sides." But this testimony did not reflect testator's subsequent intentions.

Appellants propose that the location of the photocopy is indicative of its nonrevocation. The photocopy was found in a metal box in testator's apartment "among her personal papers," but the box also apparently contained other notes designating the recipients of certain items of testator's personal property. Moreover, as recited by the trial court, the decedent kept her papers in additional places and the original will was not found in these places in spite of a diligent search. Appellants also assert that because the duplicate will was not marked "copy," testator may have mistaken the photocopy for the original and kept it as such. This argument, which at its core is mere speculation, was for the trial court's consideration and does not have weight such as to suggest clear error of the trial court.

## III. Notice

■ Finally, appellants argue that respondent did not provide them with notice that testator's will was lost or challenged. Appellants state that Minn.Stat. § 524.3–403 (1994) requires that in a "formal testacy proceeding, notice must be given if the petitioner has reason to believe that the [w]ill has been lost or destroyed." Appellants' arguments are inappropriate in this case because respondent asserted an intestacy proceeding and respondent was unaware of the photocopied will when she initiated the proceedings. Additionally, an intestacy proceeding, by definition, is premised on the fact that no valid and unrevoked will is in existence, and in such circumstances there is no need for notice.

## DECISION

The trial court properly refused to admit a photocopy of testator's will to probate, the court having permissibly weighed an inference that a missing original will was revoked and having committed no clear error in finding that revocation had occurred.

**Affirmed.**