*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2036**

In re the Supervised Estate of:
Timothy D. Kehr, Deceased

**Filed September 8, 2015
Affirmed
Peterson, Judge**

Hennepin County District Court
File No. 27-PA-PR-13-1275

Belvin Doebbert, Doebbert Law Offices, Glenwood, Minnesota (for appellants Harold B. Kail and Caroll A. Britton)

Francis J. Rondoni, Margaret M. Grathwol, Gary K. Luloff, Chestnut Cambronne PA, Minneapolis, Minnesota (for respondent Nancy Stewart)

Considered and decided by Peterson, Presiding Judge; Ross, Judge; and Hooten, Judge.

# U N P U B L I S H E D   O P I N I O N

**PETERSON**, Judge

In this probate appeal, appellants challenge the district court's orders (1) granting respondent's summary-judgment motion on the ground that the evidence was insufficient to create a fact issue on whether there was a lost, destroyed, or otherwise unavailable will benefiting appellants; and (2) denying appellants' motion to remove respondent as personal representative. We affirm.

## FACTS

Timothy D. Kehr died on September 10, 2013. Respondent Nancy Stewart was appointed special administrator of Kehr's estate. Appellants Harold Kail and Caroll A. Britton, husband and wife, filed a petition for conversion to supervised probate, claiming that they were devisees under a will existing at the time of Kehr's death that had been lost, stolen, or destroyed. The district court suspended Stewart's appointment as special administrator and ordered a hearing on appellants' petition. Following the hearing, the district court appointed Stewart the personal representative of Kehr's estate and reserved for determination the issues of whether Kehr had a will and the identification of his heirs.

Kail submitted an affidavit and sworn statements regarding the alleged lost, stolen, or destroyed will. Kail stated that appellants became friends with Kehr when they moved into his neighborhood in 1992. Beginning in 2002, Kehr told Kail on many occasions that appellants and their son "'were like family' and . . . 'wouldn't ever have to worry about money,'" which Kail interpreted to mean that Kehr intended to name appellants and their son in his will. Kail stated that it was his "absolute conviction" that a will existed and that its contents were a $3 million bequest to the "Catholic Church" and a designation of Kail as residuary devisee. Kail asserted, "[Kehr] told me repeatedly that he 'had no family,' but that he had executed a will which named the Catholic Archdiocese of Minneapolis and St. Paul as a devisee in the sum of $3,000,000.00 and also named me." Kail specifically recalled three conversations in which Kehr confirmed the existence of the will and its contents; those conversations occurred (1) during Labor Day weekend 2004, (2) after Kehr suffered a heart attack in the spring of 2006 or 2007,

2

and (3) after Kehr was defeated in a city-council election in 2010. Britton stated in an affidavit that, based on Kehr's close relationship with Kail and on Kehr's repeated statements that he had provided for Kail in his will and Kail "would not have to 'worry about money,'" she believed that Kehr had a will.

In May 2013, in a lawsuit between Kail and Kehr involving real-estate investments, Kehr testified in a deposition that he did not have a will.

In June 2014, the district court denied Stewart's motion to dismiss appellants' petition to probate a lost will and ordered that discovery be conducted on whether Kehr executed a will, the contents of any executed will, and whether any executed will was revoked. In August 2014, Stewart moved for summary judgment dismissing appellants' petition to probate a lost will, and appellants moved to dismiss Stewart as personal representative. Thomas Garry, a friend of Kehr's who claimed to have an interest in the estate, also moved to dismiss Stewart as personal representative.

Following a hearing, the district court filed two orders on November 12, 2014. The first denied the petitions to remove Stewart as personal representative, and the second granted Stewart's summary-judgment motion. The district court found that the removal petitions failed to show a sufficient reason to remove Stewart. In the summary-judgment order, the district court stated:

> Kail and Britton have failed to provide any evidence of the signing and witnessing of a Will. The only evidence relied upon by Kail and Britton are conversations between Kail and [Kehr], occurring prior to [Kehr's] deposition of May 17, 2013, when [Kehr] acknowledged that he did not have a will.

Even when all the statements submitted by Kail and Britton are assumed to be true, and not weighing them against contradictory statements by other parties (i.e. viewing all of the statements submitted on behalf of Kail and Britton, in a light most favorable to Kail and Britton), they have fallen far short of meeting the statutory requirements needed to show that there was a validly executed will of [Kehr] that is now lost, destroyed, or otherwise unavailable.

Garry appealed from the order denying removal of Stewart, but he and the estate stipulated to dismissal of the appeal. Appellants filed a notice of related appeal (NORA) challenging both November 12 orders and the March 26, 2014 order appointing Stewart as personal representative. This court dismissed Garry's appeal and the part of the NORA challenging the March 26 order and directed that the balance of the NORA shall proceed.

## D E C I S I O N

### I.

Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. We review the district court's grant of summary judgment de novo, to determine whether there are genuine issues of material fact and whether the district court erred in applying the law. *Mattson Ridge, LLC v. Clear Rock Title, LLP*, 824 N.W.2d 622, 627 (Minn. 2012). "We view the evidence in the light most favorable to the party against whom summary judgment was granted." *STAR Ctrs. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76-77 (Minn. 2002).

4

> [A] will must be:
> (1) in writing;
> (2) signed by the testator or in the testator's name by some other individual in the testator's conscious presence and by the testator's direction . . .; and
> (3) signed by at least two individuals, each of whom signed within a reasonable time after witnessing either the signing of the will as described in clause (2) or the testator's acknowledgment of that signature or acknowledgment of the will.

Minn. Stat. § 524.2-502 (2014).

"If the original will is neither in the possession of the court nor accompanies the petition . . ., the petition also shall state the contents of the will, and indicate that it is lost, destroyed, or otherwise unavailable." Minn. Stat. § 524.3-402(a)(3) (2014). "Proponents of a will have the burden of establishing prima facie proof of due execution in all cases . . . ." Minn. Stat. § 524.3-407 (2014). "Parties have the ultimate burden of persuasion as to matters with respect to which they have the initial burden of proof." *Id.* To prove due execution, the testimony of an attesting witness is required if the witness is "within the state competent and able to testify"; otherwise, "[d]ue execution of a will may be proved by other evidence." Minn. Stat. § 524.3-406(a) (2014).

Viewing the evidence in the light most favorable to appellants, between 2002 and 2010, Kehr repeatedly made statements indicating his intent to include Kail in his will. But there was no evidence that anyone ever drafted a will for Kehr,[1] no evidence that

---

[1] At a January 9, 2014 hearing, Stewart's attorney asserted that he had learned through investigation that a will benefiting Stewart had been stolen but did not provide any evidence of execution or state the basis for his belief that Stewart was the sole beneficiary.

anyone ever saw a will executed by Kehr, and no evidence that anyone ever witnessed Kehr signing or acknowledging a will.

To withstand a summary-judgment motion, a party must present specific facts showing the existence of a genuine issue for trial; speculation is insufficient. *Nicollet Restoration, Inc. v. City of St. Paul*, 533 N.W.2d 845, 848 (Minn. 1995). Summary judgment may be granted if the party opposing summary judgment has the burden of proof on an essential element and fails to "present specific admissible facts showing a material fact issue." *Doe v. Archdiocese of St. Paul*, 817 N.W.2d 150, 163 (Minn. 2012) (quotation omitted). Because appellants had the burden of proving the execution of the alleged will and the evidence presented by appellants does not go beyond speculation as to that element, the district court properly concluded that there was no genuine issue for trial and properly granted Stewart's summary-judgment motion.

Appellants argue that the facts in this case are similar to those in *Firestone v. Greenberg* (*In re Estate of Greenberg*), in which the decedent's wife challenged the district court's finding that the decedent had not revoked his will. 249 Minn. 254, 255-57, 82 N.W.2d 239, 241-42 (1957).[2] But in *Greenberg*, it was undisputed that a will, the contents of which were known, had been drafted by an attorney and executed by the decedent. *Id.* at 256, 82 N.W.2d at 242. The only issue was whether the decedent had revoked the will, and there was conflicting testimony on that issue. *Id.* at 257, 82 N.W.2d at 242. The supreme court held that when a decedent's "declarations are submitted with

---

[2] Appellants' brief cites *Calich v. Consul of Kingdom of Jugo-Slavia* (*In re Calich's Estate*, 214 Minn. 292, 8 N.W.2d 337 (1943). The citation appears to be a typographical error because the language quoted in appellants' brief is from *Greenberg*.

6

other evidence, they are relevant and competent to overcome the presumption that a will known to have been executed by and left in the custody of a testator, which cannot be found after his death, was revoked by him during his lifetime." *Id.* at 261, 82 N.W.2d at 244. To the extent that *Greenberg* is relevant, it supports the district court's decision because there was no evidence that a will had been drafted by an attorney and executed by Kehr and the most recent conversation regarding Kehr's intent that Kail recalled occurred in 2012, more than two years before Kehr died, during which Kehr could have revoked a will, if one existed.

## II.

Appellants argue that Stewart should not have been appointed as personal representative because other persons had priority under Minn. Stat. § 524.3-203 (2014). But this court dismissed the part of the NORA challenging the order appointing Stewart as personal representative. Minn. Stat. § 524.3-611(b) (2014), which governs removal of a personal representative, states:

> Cause for removal exists when removal is in the best interests of the estate, or if it is shown that a personal representative or the person seeking the personal representative's appointment intentionally misrepresented material facts in the proceedings leading to the appointment, or that the personal representative has disregarded an order of the court, has become incapable of discharging the duties of office, or has mismanaged the estate or failed to perform any duty pertaining to the office.

"This court will not reverse the district court's determination regarding removal of a personal representative unless the district court clearly abused its discretion by

7

disregarding the facts." *In re Estate of Martignacco,* 689 N.W.2d 262, 269 (Minn. App. 2004), *review denied* (Minn. Jan. 26, 2005).

Appellants make numerous allegations of wrongdoing against Stewart. The credibility of these allegations was an issue for the district court's determination. *See In re Guardianship of O'Brien*, 847 N.W.2d 710, 714 (Minn. App. 2014) (stating that this court "defer[s] to the district court's factual determinations and credibility assessments"). Also, a list of next-of-kin submitted by a cousin of Kehr identified 25 heirs. Fourteen of the 25 agreed to Stewart's appointment as personal representative, and none objected. Finally, the district court imposed a $5 million surety bond, which it found sufficient to protect appellants' claimed interests. The district court did not abuse its discretion in determining that appellants failed to show cause to remove Stewart.

**Affirmed.**